CHARLES CIRIACK *vs.* MERCHANTS' WOOLEN COMPANY.

Suffolk.    January 13, 1890. — February 26, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Instructions as to Dangerous Machinery — Negligence — Due Care.*

A boy twelve years of age, after working about six weeks in the same room with, but not upon, certain machines, the rapidly revolving gearing of which was upon the outside and in sight, in obeying an order from the overseer to go between the machines to get a tool, and to hurry, became entangled in the gearing and was injured. At the trial of an action to recover for such injuries, there was evidence that the place was dimly lighted; that he had less than the average

intelligence of boys of his age; that he had never worked so near the machines as to have occasion specially to consider the risk of injury therefrom; and that he had never been instructed as to the risk. *Held,* that the case was properly submitted to the jury.

TORT for personal injuries sustained by the plaintiff, on May 29, 1872, while in the defendant's employment. Writ dated June 16, 1885. At the trial in the Superior Court, before *Blodgett,* J., after the former decision, reported 146 Mass. 182, there was evidence tending to prove the following facts.

The accident to the plaintiff occurred in the finishing-room of the defendant's mill, a room filled with machines, including shears and gigs, the latter cylindrical machines for rubbing up the nap of the cloth. The gigs were about five feet high and square, and had upon one side gearing, in plain sight, consisting of three cog-wheels, each about eighteen inches in diameter, and one small cog-wheel about one and a half inches in diameter. The cylinder of each gig stood in an iron frame fastened to the floor by four legs, the bottom of the cylinder at its lowest point being about one and a half feet from the floor. Nothing obstructed the view underneath the cylinder except so far as the cylinder itself did so. The cylinder and the gearing, both of which revolved rapidly, moved always in the same direction. Two of these gigs stood together in the room, the distance between them at the narrowest point from the cog of one gig to the belt wheel of the other being about one and a half feet, with a passageway between them and adjoining machines. The plaintiff was injured by being caught in the gearing at a point three and a half feet from the floor, where the small cog-wheel came in contact with one of the other cog-wheels. The plaintiff and other boys were employed in the finishing-room, and his duty, as instructed by them, was to take cloth from an apron on the back of the finishing shears, and wheel it on trucks through one of the passageways to another room, called the gig-room; also to take cloth from racks and wheel it to the shears and fasten it upon the apron. These racks were small flat platforms about four inches from the floor, and stood directly in front and within six inches of the two gigs, but were not connected with them. The plaintiff's duties did not require him to go between the machines, or to have anything to do with the gigs for the pur-

pose of oiling them or otherwise, his only duty being to take care of the cloth. The regular way to the gig-room was through the passageway above mentioned, but there was room for a man to pass with care between the gigs when they were running, and some of the men and boys occasionally went to and from the gig-room in that way, but the space was not designed or intended for a passageway. One Craven was the overseer of the finishing-room when the plaintiff began to work there, but just before the accident one Miller was made overseer in his place.

The plaintiff testified that he was born on February 12, 1860; that he went to work in the finishing-room in April, 1872; that he had worked for a while previously in the flock-room, a room adjoining the finishing-room, his only duty being to shovel flocks into a flocking-machine and to carry away the cloth when flocked; that Craven told him when he began work to do what the other boys told him to do; that with the other boys he wheeled cloth from the racks to the shears, and thence when sheared into the gig-room; that he had nothing to do with the gigs, and did not think that he came within two feet of them in doing his work; that after he had worked in the finishing-room about six weeks, on the morning of the accident, as he was returning from wheeling some cloth into the gig-room and was proceeding along the passageway, Miller spoke to him sharply, and told him to get a punch that had been left between the two gigs where Miller had been mending a machine, and then told him to hurry up about it; that he thereupon left his work, and in going to the place where he was told to go he hurried as fast as he could, and went in between the gigs; that he had never done or helped to do anything on a gig, and had no recollection of having previously gone between them, and did not know or believe that he ever looked at or examined these machines; that when between the gigs he began to look for the punch, and, as he could not see anything while he was standing up, he stooped down to see if he could find it; that as he raised himself up the sleeve of his jacket was caught in the gearing and his arm was drawn in and injured; that he did not know until afterwards by what he had been caught; that when he went between the machines and searched for the punch he did not realize that there was any danger; that before and after going into the mill he had not received or

been given any instructions with reference to the danger of the machinery or of the gearing, and had no knowledge of the danger of either; that he had no recollection of noticing that the machinery in the gig-room or finishing-room was in operation; and that the only knowledge he had that they were running was from being caught.

The plaintiff introduced numerous witnesses, who testified that the plaintiff was at the time of the accident a boy of less than the average intelligence of boys of his age; but this was contradicted by various witnesses of the defendant.    There was also evidence tending to show that the place where the injury occurred was dimly lighted.    The jury took a view of the place.

The judge refused to rule, as requested by the defendant, that, upon all the facts, the jury would not be justified in returning a verdict for the plaintiff; and submitted the case to the jury, with instructions not otherwise excepted to.

The jury returned a verdict for the plaintiff in the sum of $5,000; and the defendant alleged exceptions.

*R. M. Morse, Jr. & H. G. Nichols*, for the defendant.

*H. W. Bragg & E. Greenhood*, for the plaintiff.

KNOWLTON, J.    This case has once before been considered by this court, (see 146 Mass. 182,) and on the testimony then presented it was not easy to determine, as it is not now, upon slightly different testimony, whether there was any evidence of negligence on the part of the defendant.    The only negligence alleged is the failure to warn the plaintiff of the dangers to which he was subjected in doing his work.

An employer is under no obligation to warn an employee of dangers which are obvious, nor to instruct him in matters which he may fairly be supposed thoroughly to understand. Nor is it the duty of the master to admonish his servant to be careful, when the servant well knows his danger and the importance of using care to avoid it.    It is the duty of the servant to exercise care proportionate to the danger of his situation as he understands it, and if he fails to do so the fault is his and not his master's.    But where the work of a servant exposes him to danger of which he is ignorant, and which, from youth or inexperience, he is manifestly incapable of comprehending

without assistance, it is the duty of his master, if he knows or ought to know of it, to give him such warning and instruction as are necessary for his safety. In determining the master's duty in such a case, the inquiry is, What instruction does the servant appear to need? is there reason to believe him ignorant of anything which, for his protection, he ought to know, or incapable of appreciating the risks from what he sees around him? In the absence of anything to show the contrary, the master has a right to assume that he knows those facts of common experience with which ordinary persons of his age and appearance are familiar. In hiring a boy twelve years of age and apparently of average intelligence, an employer is not called upon to tell him that, if he holds his hand in fire, it will be burned, or strikes it with a sharp instrument, it will be cut, or thrusts it between the teeth of revolving cog-wheels in the gearing of a mill, it will be crushed. From infancy and through childhood, as well as in later life, we are all making observations and experiments with material substances, and every person of ordinary faculties acquires knowledge at an early age of those familiar facts which force themselves on our attention through our senses.

There is nothing in this case to warrant a jury in finding the defendant negligent in omitting to tell the plaintiff that there were cog-wheels on the gig, or that the machinery would injure him if he allowed his hand or arm to get into the gearing, or in failing to repeat a warning which had once been given, or to inform him of risks which he understood himself. *Williams* v. *Churchill*, 137 Mass. 243. *Russell* v. *Tillotson*, 140 Mass. 201. *Crowley* v. *Pacific Mills*, 148 Mass. 228. *Buckley* v. *Gutta Percha & Rubber Manuf. Co.* 113 N. Y. 540. But the case presents itself in an aspect somewhat different from that which it wore at the former hearing. Besides some difference in the details of the testimony at the last trial, evidence was introduced from numerous witnesses, which, though contradicted, would warrant a jury in finding that the plaintiff was a boy of less than the average intelligence of boys of his age, and that the defendant knew it, or from his appearance ought to have known it, before the accident. There was additional evidence that the place where he was injured was dimly

lighted. The undisputed testimony at the former trial tended to show that he possessed at least the intelligence usual in boys of his age, and that fact was referred to in the opinion as one of the grounds of the decision.

It now appears that, while he had worked for a considerable time in the room where the gearing was plainly visible, so that he was undoubtedly familiar with it in a general way, he had never worked so near it as to have occasion specially to consider the risk of getting his clothing caught in it, or the danger of being drawn into it and seriously injured, if some loose part of one of his garments should come in contact with it. There was evidence that a sleeve of his jacket was caught, and that his arm was thus drawn between the wheels. It seems to have been his duty to obey the overseer, who, as he testifies, told him to pick up the punch. The work took him to a place where he had never had occasion to work before; the order was imperative, calling for haste. He had had no instruction, and it is not clear that he had had any observation or experience, which showed the danger that, in getting down and looking under the machine and getting up again, some part of his clothing might come in contact with the gearing and be caught, and draw his hand or arm between the wheels.

On the whole, we are of opinion that there was some evidence to submit to the jury on the question whether the plaintiff was not obviously in need of information as to this risk. On similar grounds, the plaintiff was allowed to go to the jury, and receive a verdict, in *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. See also *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294; *Glover* v. *Dwight Manuf. Co.* 148 Mass. 22; *Swoboda* v. *Ward,* 40 Mich. 420; *Huizega* v. *Cutler & Savidge Lumber Co.* 51 Mich. 272; *Dowling* v. *Allen,* 74 Misso. 13.

There was evidence for the jury upon the question whether the plaintiff was in the exercise of due care.

*Judgment on the verdict.*