WILLIAM CARRINGTON, WHO SUES, &c., PLAINTIFF IN ERROR, v. CHRISTIAN I. MUELLER ET AL., DEFEND-ANTS IN ERROR.

Argued June 22, 1900—Decided November 19, 1900.

1. Minor servants are held to assume, by their contract of employ-ment, those ordinary risks of their service that are obvious to them, or that have been pointed out to them in a manner suited to their youth and inexperience.

2. In order to charge a master with negligence in permitting the use by a minor servant of a machine, the ordinary danger of which was obvious, something more must be shown than the fact that the machine, by its unusual and unaccountable behavior upon a single occasion, injured the plaintiff in a way that was not obvious; something in the nature of a *scienter* must be proved from which it may be inferred that the master, by the exercise of reasonable caution, could have apprehended such an occurrence.

On error to the Supreme Court. Tried at the April Term, 1900, of the Hudson Circuit, before Mr. Justice Lippincott and a jury.

The plaintiff was nonsuited. His action was for damages for the loss of the first two fingers of his right hand, which were cut off by the knife of "an egg noodle cutting machine," at which he was working as a servant of the defendant. The plaintiff at the time was thirteen years of age.

The machine, which was operated by steam power, consisted of a steel knife blade about fifteen inches square, sharpened at its lower edge. At each side of this blade hooks were attached that ran down through the table beneath the blade and then came together and as one rod, connected with a crank that revolved upon an axle. Each downward motion of the crank in its revolution pulled the knife blade down to a cutting-block that was moved across the surface of the table by a cog arrangement. With each upward movement of the crank an iron rod that was fastened into the top of the knife blade and connected at its other end with a spring-board in the ceiling drew the knife upward and held it up until the revolution of the crank pulled it down again. The machine was started and stopped by means of a shifter which threw the belt on and off a tight pulley. When the belt was thrown off, the momentum gradually spent itself until the crank no longer could counteract the strength of the spring-board, which would then hold the knife at its greatest height, until the power was again applied. During the period of this gradual loss of momentum some twenty downward and upward movements of the knife would occur before it was finally arrested and held up. So long as the crank made complete revolutions the blade would come all the way down to the block; as the crank lost the power to revolve and made only half movements or less, the knife would come down a corresponding distance, always going slower and slower, until either it stopped or the power was reapplied.

In the operation of this machine, rolls of dough were placed by the plaintiff upon the cutting-block, and by it car-

ried under the knife until the dough was cut into pieces of suitable length. In the course of this operation, pieces of dough and small ends of the rolls accumulated, which it was the duty of the plaintiff to remove after he had stopped the machine. At the time he was injured it was quitting time, and the work had stopped. The plaintiff had thrown off the belt, the blade had descended some twenty times and then had stopped. The plaintiff was in the act of taking the pieces of dough off the cutting-block when the blade "came down very fast" and cut off two of his fingers.

At the close of the plaintiff's testimony, a motion to non-suit was made which was granted upon the ground that negligence upon the part of the master had not been shown.

For the plaintiff in error, *Charles D. Thompson.*

For the defendant in error, *Hudspeth & Puster.*

The opinion of the court was delivered by

GARRISON, J. When a motion to nonsuit is made, the testimony of the plaintiff's witnesses becomes, for the purposes of the motion, a state of the case in which every pertinent fact, and every permissible inference is resolved in the way most favorable to the plaintiff's recovery of a verdict. The motion to nonsuit is, in effect, a demurrer to the evidence for the plaintiff. It admits all of the facts that a jury might legitimately find to be proved, and charges that as a matter of law the proof of those facts would not entitle the plaintiff to a verdict. In the present case the cardinal facts so found, in addition to the description of the machine and of the plaintiff's injury, are that the plaintiff was told by the defendant to clean the cutting-board beneath the knife when work was stopped, and that while doing as he was bid, the knife came down upon his hand and injured him.

The defendant's proposition is that from these facts, its negligence in respect to any duty that it owed to the plaintiff is not a permissible inference.

The law upon this subject is not open to any manner of

doubt. It was stated by Mr. Justice Dixon in the Supreme Court in the case of *Beckham* v. *Hillier,* 18 *Vroom* 12, 14, as follows : "Minor servants are held to assume, by their contract of employment, those ordinary risks of their service which are obvious to them or have been pointed out in a manner suited to the comprehension of youth and inexperience." This language was adopted by this court by Mr. Justice Van Syckel in the case of *Smith* v. *Irwin,* 22 *Id.* 507, and more recently by Judge Hendrickson in *Christoph* v. *Addicks,* 33 *Id.* 786.

It is to be observed in the application of this rule that the primary question is not as to the manner in which the risk was pointed out to the minor, or whether it was pointed out at all, but whether the danger was obvious to him. That is to say, the duty to instruct is a secondary one and does not arise when the danger is obvious. Whether the danger be obvious is, when entirely clear, a court question, bearing in mind that it is the danger of doing that which the minor is set to do, or permitted by the master to do, that must be obvious. If that which he is set to do be not dangerous in itself, but be fraught with dangers that are more or less matters of in- ference, or if it be dangerous or not, according to circum- stances, the question whether such intercurrent dangers were obvious to one of the plaintiff's age and capacity is generally for the jury. The cases cited are illustrations of this dis- tinction. In Smith *v.* Irwin the work at which the plaintiff was set would not obviously expose him to danger from the mere fact that the buzz saw was in operation, hence the ques- tion of its obviousness properly went to the jury. In Chris- toph *v.* Addicks, the service was free from danger until the plaintiff in imitation of older workmen used his foot to press down the clay, an operation that would be deemed dangerous by one of adult intelligence, but would not necessarily be so to the infant mind. In *Deffur* v. *Brandes,* 44 *Atl. Rep.* 1100, it was a question for the jury whether the minor plaintiff should not have been told that a steel spring, when released from inside a bobbin, might fly into his face, and whether the manner of safely releasing it should not have been ex- plained to him.

In the present case the danger of placing his hand upon the cutting-board when the knife was in operation was perfectly obvious to the plaintiff. He did not need to be told that if his hand was on the block when the knife came down that it would injure him. He was not hurt because he did not know that, but because he did not know that the knife would come down after the power had been thrown off and the momentum was spent. No instruction that the defendant could have given him would have told the plaintiff anything that he did not already know, unless the master had informed him that what actually happened, according to the state of the case, was among the possibilities to be apprehended. To this there are two answers—first, that if the machine be as it is described by the plaintiff's testimony, such a thing was not among the mechanical possibilities in the absence of some defect or disorder of which there is no suggestion; and second, that the master is not shown to have been possessed of any information from which he knew or ought to have known that such an occurrence was possible. The law applicable to this phase of the controversy has recently received the attention of this court in the case of *Bien* v. *Unger*, 35 *Vroom* 596. Briefly restated and applied to the present case, it is, in order to charge a master with negligence in permitting the use by a minor servant of a machine, the ordinary danger of which is obvious, something more must be shown than the fact that the machine, by its unusual and unaccountable behavior, upon a single occasion, injured the plaintiff in a way that was not obvious; something in the nature of *scienter* must be proved, from which it may be inferred that the master, by the exercise of reasonable caution, could have apprehended such an occurrence.

The case before us is entirely barren of any proofs that tend to connect the plaintiff's injury with the neglect of the defendant to perform any duty growing out of the relation of master and servant.

This is the proposition upon which the defendant rested his motion to nonsuit. The ruling embodied in the bill of exceptions is correct. The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, COLLINS, FORT, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.   11.

*For reversal*—None.