ALBERT CARLETON *v.* E. & T. FAIRBANKS & COMPANY.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed February 12, 1915.

*Master and Servant—Injury to Servant—Master's Duty to Warn and Instruct—Extent of Required Warning and Instruction—Obvious and Hidden Dangers—Master's Liability and Servant's Contributory Negligence—Questions for Jury—Assumption of Risk—Applicability to Ordinary Dangers—Applicability to Mere Alleged Failure to Warn and Instruct—"Volenti Non Fit Injuria"—"Injury"—"Damage"—Expert Evidence—Admissibility—Argument of Counsel—Implied Ruling—Exceptions—Sufficiency—Waiver.*

In a servant's action for negligence, where the declaration consists of two counts, and the special findings of the jury clearly show that the verdict for plaintiff is based on negligence under both counts, defendant's exception to the ruling of the court allowing plaintiff to go to the jury under the second count will not be considered on review, if the evidence of negligence under the first count is found to be sufficient, for that would support the verdict.

A master is not required to warn a servant of ordinary intelligence concerning obvious dangers, but in determining what dangers are

obvious. the servant's experience or lack of experience must be considered.

Where there are hidden dangers, though incident to the employment, of which the master has actual or imputed knowledge, but of which he has reason to believe the servant is ignorant, or is incapable of understanding and appreciating, and so will be unable to protect himself therefrom, it becomes the duty of the master suitably to warn and instruct the servant concerning such dangers.

The master's duty to warn and instruct his servant is commensurate with the needs of the servant of which the master has actual or imputed knowledge, and is not discharged by merely telling the servant that the work is dangerous, especially where the danger is concealed, but the servant must be warned of the particular or peculiar danger incident to the service.

Where a servant is injured in the operation of a machine such as a circular saw, the ordinary danger of which is obvious, in order to make the master liable for failure to warn and instruct it is not sufficient to show merely that the machine by its unusual and unaccountable behavior on a single occasion injured plaintiff in a way that was not obvious, but it must further appear that the master ought to have anticipated such an accident.

In a servant's action for injury caused by his hand coming in contact with a circular saw that he was using, owing to defendant's alleged negligence in failing to warn and instruct plaintiff, evidence considered and *held* sufficient to take the case to the jury, both as to defendant's negligence and as to plaintiff's contributory negligence.

Where a servant's injury results from an ordinary danger, one that inheres in the service and exists when the business is conducted with the care of a prudent man, the master is not liable, not because the servant has assumed the risk, but because the master was not negligent; for it is when the negligence of the master is made to appear that the doctrine of assumption of risk comes into operation.

It results from the doctrine of *volenti non fit injuria* that where a servant, knowing and comprehending an extraordinary danger, one that exists through the master's negligence, voluntarily encounters it, though not negligent in so doing, and is injured in consequence, he assumes the risk and cannot recover.

The term "injuria" as used in the maxim *volenti non fit injuria* is not synonymous with "damage," but denotes the invasion of a legal right, while "damage" is the harm, detriment, or loss sustained because of the injury, though there are many cases of damage without any legal injury,—*damnum absque injuria.*

The doctrine of assumption of risk can have no application in a servant's action for injuries resulting from the claimed failure of the master to caution and instruct the servant.

Either contributory negligence or assumption of risk bars a servant's action for negligence, but for wholly different reasons, and the defence of contributory negligence can apply only when actionable negligence has been otherwise established.

A servant is not bound to protect himself from unknown concealed dangers.

In a servant's action for injury to his hand, caused by the board he was sawing with a circular saw flying up at the end opposite him, so that his hand was thrown against the saw, and owing to the alleged negligence of defendant in failing to give plaintiff proper caution and instruction, an expert on circular saws was properly allowed to testify that, if there was not sufficient "set" in the saw, it would have a tendency to make the board jump up, as tending to explain the behavior of the saw at the time of the injury.

A party excepting to the argument of opposing counsel has the burden of making the record show that the argument was not legitimate.

It is error for counsel in argument to the jury to state as a fact a matter in respect of which there is no evidence.

By allowing an exception to argument of counsel to which objection was made, the court impliedly ruled against the objector's contention.

Numerous statements by plaintiff's counsel in argument to the jury considered and *held*, in the circumstances, not to require a reversal.

Where defendant excepted to the charge of the court "because it does not contain instructions to the jury that plaintiff is assumed to know that he must not put his hands in a position where they would be likely to get onto the saw", and all that defendant says in its brief on that exception is that the court did not charge on that subject, and refers to the paragraph of the brief relating to contributory negligence as a ground for its motion for a directed

verdict, the question is not sufficiently briefed to require attention on review.

An exception to the charge of the court "because there was no evidence in the case tending to show that the defendant didn't know at the time he was injured, at the time and before he was injured, that the stick was liable to fly up", is an exception to the whole charge, and too general to reserve any question.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1913, Caledonia County, *Fish*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Joseph Fairbanks, Alexander Dunnett*, and *Harland B. Howe* for the defendant.

The plaintiff assumed the risk. The defendant especially directs the attention of the Court to the fact that neither side asked the plaintiff any questions respecting his knowledge or appreciation of the dangers from the saw *at the time of the accident*. All inquiry related to his knowledge and experience at the time he began using the saw. Therefore it becomes purely a question of law as to how far the facts disclosed charge the plaintiff with a knowledge of the risks he took. In this inquiry it must be remembered that the burden of proof is on the plaintiff to establish that he did not assume the risk. *Wiggin* v. *E. Z. Waist Co.*, 83 Vt. 365; *Duggan* v. *Heaphy*, 85 Vt. 515; *Johnson* v. *B. & M. R. R.*, 78 Vt. 344; *Burleson* v. *Morrisville Lumber & Power Co.*, 86 Vt. 492; *Hartigan* v. *Deerfield Lumber Co.*, 85 Vt. 133; *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269; *Wallace's Admr.* v. *Fox*, 81 Vt. 136; *Harris* v. *Bottom*, 81 Vt. 346; *Hatch* v. *Reynolds' Estate*, 80 Vt. 294; *Skinner* v. *Central Vermont Ry. Co.*, 73 Vt. 336; *Williamson* v. *Sheldon Marble Co.*, 66 Vt. 427; *Latremouille* v. *Bennington & Rutland Ry. Co.*, 63 Vt. 336; *Carbine* v. *R. R. Co.*, 61 Vt. 348; *Stuart* v. *West End Street R. R. Co.*, 163 Mass. 391; *Lowcock* v. *Franklin Paper Co.*, 169 Mass. 313, 47 N. E. 1000; *Burke* v. *Davis*, 191 Mass. 20; *Sullivan* v. *Simplex Electric Co.*, 178 Mass. 35; *Gaudet* v. *Stansfield*, 182 Mass. 451; *Ciriack* v. *Merchant's Woolen Co.*, 151 Mass. 152; *Pratt* v. *Prouty*, 153 Mass. 333; *Coullard* v. *Tecumseh Mills*, 151 Mass. 85; *Morancy* v. *Hen-

*nessy,* 24 R. I. 205, 52 Atl. 1021; *Day* v. *Achron,* 23 R. I. 627, 50 Atl. 654; *Kelley* v. *Silver Spring Co.,* 12 R. I. 112; *Cowett* v. *American Woolen Co.,* 97 Me. 543; *Bessey* v. *Newichawanica Co.,* 94 Me. 61; *Cunningham* v. *Iron Works,* 92 Me. 501; *Dickenson* v. *Vernon,* 77 Ct. 537; *Ogley* v. *Miles,* 139 N. Y. 458; *White* v. *Wittemann Lythographic Co.,* 131 N. Y. 631; *Hickey* v. *Taafe,* 105 N. Y. 26; *DeGraff* v. *N. Y. C. & H. R. R. Co.,* 76 N. Y. 125; *O'Keefe* v. *Thorn,* 2 Pa. Supr. Cases 73, 16 Atl. 737; *Bender* v. *N. Y. Glucose Co.,* 72 N. J. L. 218; *Carrington* v. *Mueller,* 65 N. J. L. 244; *Atlas Engine Works* v. *Randall,* 100 Ind. 293; *Jones* v. *Phillips,* 39 Ark. 17; *Truntle* v. *North Star Woolen Mill Co.,* 57 Minn. 52; *Wabash Ry. Co.* v. *Ray,* 152 Ind. 392, 51 N. E. 920; *Sievers* v. *Peters Box & Lumber Co.,* 151 Ind. 642, 50 N. E. 877; *Montgomery Coal Co.* v. *Barringer,* 218 Ill. 327, 75 N. E. 900; *Jones* v. *Roberts,* 57 Ill. App. 56; *Groth* v. *Thomann,* 110 Wis. 488; *Relyea* v. *Tomahawk Pulp and Paper Co.,* 110 Wis. 307, 85 N. W. 960; *Roth* v. *Barrett Mfg. Co.,* 96 Wis. 615; *Greef Bros.* v. *Brown,* 7 Kan. App. 394; *Mackin* v. *Alaska Refrigerator Co.,* 100 Mich. 276; *Nugent* v. *Kaufmann Milling Co.,* 131 Mo. 241; *Hoyle* v. *Excelsior Steam Laundry Co.,* 95 Ga. 34; *Hanson* v. *Hammel,* 107 Iowa 171; *Glenmont Lumber Co.* v. *Ray,* 126 Fed. 524; *Kenney* v. *Meddaugh,* 118 Fed. 209; *Meyers* v. *Chi. St. P. M. & O. Ry. Co.,* 95 Fed. 406; *The Maharajah,* 40 Fed. 784; *Kupkofski* v. *Spiegel Co.,* 135 Mich. 7, 97 N. W. 48; *Butler* v. *Frazee,* 200 U. S. 459, 53 L. ed. 281; *Kellogg* v. *Stevens Lumber Co.,* 125 Mich. 222, 84 N. W. 136.

*Simonds, Searles & Graves* for the plaintiff.

TAYLOR, J.   This is an action on the case for negligence in failing to provide a safe saw rig and in failing to give the plaintiff proper instructions in the use of a circular saw on which he was injured.   The plaintiff was employed in the parts-packing room, so called, of the defendant's scale factory.   The injury complained of consisted of a deep cut across the palm of the left hand caused by the hand coming in contact with the saw that plaintiff was using in the course of his employment. The evidence tended to show the following facts:

On the day of the accident, July 19, 1912, the plaintiff was using the saw to split a short piece of board.   He was using

his left hand alongside or back of the saw to steady the board. The saw caused the board to jump and fly up at the end opposite him, so that his hand was thrown against the saw and severely cut. At the time of the injury, the plaintiff was nineteen years old. He had just graduated from St. Johnsbury Academy and was set to work in the packing room on June 14, 1912. The principal duty of the plaintiff was to pack parts of scales in wooden boxes and to nail them up. The circular saw in question was furnished for the purpose, among others, of fitting crates and box covers and the plaintiff was directed to use it in the performance of his duties. It stood in the packing room which was about thirty feet long and twenty-five feet wide. The saw was mounted on an ordinary wooden saw-table about four feet square. Suspended over the saw-table at the rear of the saw was an adjustable steel wheel about six inches in diameter and of tapering thickness, thinner at the edge, which witnesses at the trial denominated as a guard or spreader. This wheel could be raised or lowered by means of a thumbscrew and shank and its distance from the saw adjusted by a curved tongue, on which it could be moved. This whole device was fastened from above in line with the saw; and when "down" the wheel was held in position about an eighth of an inch above the saw-table and about an inch from the saw on the side away from the operator. The wheel, when lowered far enough to engage the saw-cut in a board passing through the saw, would spread the board and tend to prevent it from binding on the saw; and also, on account of the tapering thickness of the wheel, would tend to keep it from rising or jumping after it had passed under the wheel.

The plaintiff was set to work by the foreman of the packing department, one Corfield, and was told to do what one Noyes, an assistant foreman, instructed him. Noyes and the plaintiff usually worked on the same side of the room and the same side of the saw-table. The evidence was conflicting as to when the plaintiff first commenced to use the saw. Plaintiff testified that he did not use the saw until about one week after entering the department and that from that time until the accident he used it seven or eight times a day, amounting in all to about fifteen minutes per day. The defendant's evidence tended to show that he was not allowed to use the saw for two or three weeks after entering the depart-

ment and that he had used it one to two weeks before the
accident. Before the plaintiff began to use the saw it was his
practice to ask some other man, usually Noyes, to do whatever
sawing he required. This occurred seven or eight times a day.
Plaintiff testified that he did not especially notice how the saw-
ing was done, being busy about something else meantime; while
defendant's evidence tended to show that he watched the opera-
tion. The saw was in use by someone about three-fourths of
the time each day.

The plaintiff testified that he had never used a circular
saw before, nor seen one in use, aside from this one, and knew
nothing about it; that he was not told in sawing a board to
reverse it and did not know that such method ought to be em-
ployed. His evidence tended to show that he did not under-
stand the nature and condition of the saw and saw-table in
question except what he had learned by using it and observing
others use it; that he was never told anything about the guard
or spreader, nor what it was used for; that he did not know
what it was; that he had never noticed any one using it, but
that he supposed it was for use in connection with some other·
work that was done with the saw; that he thought it was down
about half the time; that it was up away from the saw at the
time of the injury; that it did not interfere with the splitting
of a board when it was down, as the wheel then entered the
saw-cut. He further testified that no board ever jumped with
him when he was using the saw before the time of the accident,
and there was no evidence that he was instructed that there
was any danger in that regard.

The evidence as to instructions was conflicting. The plain-
tiff testified that Noyes told him to be careful not to cut his
fingers and that he received no other or different instructions.
The defendant's evidence tended to show that the plaintiff was
fully instructed in the use of the saw, both by Corfield and
Noyes, and was shown how to raise and lower the guard or
spreader; that several boards were put through the saw while
plaintiff watched and he was instructed how, in splitting a
short board, it should be run about half way, then drawn out,
reversed and sawed from the other end to meet the first cut,
to keep the operator's hands from the saw; that plaintiff was
given instructions as to starting and stopping the machinery

and the use of the gauge on the saw-table; that he was cautioned to be careful.

The defendant's foreman was first called as a witness by the plaintiff and later by the defendant. In his direct and cross-examination by the plaintiff he testified that in sawing a board the same ought to be sawed half way, then turned end for end and the saw-cut completed from the opposite end, in order to prevent the board's binding on the saw and jumping up, that being the safer way to saw a board; that if such course were not followed the board was liable to "buck" or jump up; that if the guard or spreader was not down in position it was the safest way for the operator to run his left hand by the saw in order to hold down the board and thus prevent it from "bucking" or flying up. Another witness called by the plaintiff testified that in holding a board down on a saw-table, the operator should never let his hand go past the front edge of the saw.

The evidence tended to show that the saw in question when in motion made about 2400 revolutions per minute. Plaintiff's evidence tended to show that a board will occasionally jump on a saw-table and that this may be caused by the spring of the table. The saw itself was not produced in court and there was no evidence as to its condition at the time of the injury, further than what was furnished by the board, which the defendant produced as the one that was being sawed at that time. The plaintiff claimed that the board produced was not the one in question. The defendant produced the saw-table in court with a saw therein similar to the one in use at the time of the accident, and the table was an exhibit in the case. One Clark, called by the plaintiff as an expert, testified that the spring in the table before the jury would be sufficient to make a board jump. There was no evidence respecting defects in the table, except such as was furnished by the table itself and the above testimony by Clark. The defendant's evidence tended to show that the table stood firm in the factory. After Clark had testified as above, it was discovered by one of defendant's witnesses that the table, as it was being demonstrated in court, was jacked upon a cog wheel on one side. The witness released the cog, making the table somewhat firmer, and testified that it stood that way in the factory and not raised on the cog.

At the close of the evidence, the defendant moved for a directed verdict on the grounds: (1) That no negligence on the part of the defendant is established; (2) That the plaintiff assumed the risk; (3) That the plaintiff was guilty of contributory negligence. The court overruled the motion and defendant was allowed an exception as to each ground of the motion. The defendant also excepted to the ruling of the court that the plaintiff could go to the jury on the second count charging negligence in failing to provide a safe saw-table and saw-rig. The court submitted special questions which the jury answered as follows:

Q. Do you find that the defendant was negligent in not furnishing the plaintiff a reasonably safe saw-bench and saw? A. Saw-bench, yes.

Q. Do you find that the defendant was negligent in not giving the plaintiff instructions in the use of the saw? A. Yes.

On the ground of the motion that negligence on the part of the defendant was not established it is unnecessary to consider whether there was sufficient evidence to go to the jury under the second count of the declaration, for the special findings of the jury clearly indicate that their verdict is based upon negligence under both counts; and it will be supported, if the evidence of negligence under the first count is found sufficient. The negligence charged in the first count was in substance defendant's failure to warn the plaintiff of the danger that the circular saw in question would cause a board in the process of being sawed thereon, suddenly and without warning to fly up at one end with violence and thereby the hand of the person operating the saw be thrown against it and injured; and failure to instruct the plaintiff how to avoid such danger. There is in this count no allegation of any defect in the saw or saw-table; so the negligence charged relates to the master's failure to warn and instruct in relation to a danger which existed without fault on his part.

The law concerning the master's duty to instruct his servants is well settled and so well understood that it is unnecessary to go into any extended discussion. The general principles are stated in our own cases, among which are *Reynolds* v. *B. & M. Railroad Co.*, 64 Vt. 66, 24 Atl. 134, 33 Am. St. Rep. 908; *Williamson* v. *Sheldon Marble Co.*, 66 Vt. 427, 29 Atl. 669;

*Sias* v. *Consolidated Lighting Co.*, 79 Vt. 224, 64 Atl. 1104; *Hayes* v. *Colchester Mills*, 69 Vt. 1, 37 Atl. 269, 60 Am. St. Rep. 915; *LaFlam* v. *Missisquoi Pulp Co.*, 74 Vt. 125, 138, 52 Atl. 526; *Wiggins* v. *E. Z. Waist Co.*, 83 Vt. 365, 76 Atl. 36; *Burleson* v. *Morrisville Lumber & Power Co.*, 86 Vt. 498, 86 Atl. 745. The few cases from other jurisdictions cited upon the question of defendant's liability are selected because of their special applica-·tion to the circumstances of the case.

The measure of the master's duty to warn and protect his servant from the dangers of his employment depends upon the circumstances of each case, including the degree of intelligence and the experience or lack of experience of the servant. He is under no duty to warn a servant of ordinary intelligence of dangers which are obvious, but, in determining what dangers are obvious, the experience or lack of experience of the servant must be taken into account. Where there are hidden or latent dangers, though incident to the employment, of which the master knows, or in the exercise of reasonable care ought to know, and which he has reason to believe the servant does not know, or from ignorance or inexperience is not capable of understanding or appreciating, and so will not be able to protect himself from injury because of them, it becomes the master's duty to give suitable warning and instructions concerning such dangers. *Dooley* v. *Sullivan et al.*, 218 Mass. 597, 106 N. E. 604; *Pittsburg &c. R. Co.* v. *Hewitt*, 102 Ill. App. 428; *Ciriack* v. *Merchant's Woolen Co.*, 151 Mass. 152, 23 N. E. 829, 6 L. R. A. 733, 21 Am. St. Rep. 438; *Kaezimarek* v. *Guedar &c. Co.*, 148 Wis. 46, 134 N. W. 348, 44 L. R. A. (N. S.) 779, Ann. Cas. 1913 A. 1139; *Martin* v. *Jerry Madden Shingle Co.*, 168 Mich. 175, 130 N. W. 614, Ann. Cas. 1913 C. 124, note 128; *Nadau* v. *White River Lumber Co.*, 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29 and note.

The master's obligation in this regard is not discharged by informing the servant generally that the work in which he is engaged is dangerous; and especially is this so when the particular hazard is latent or concealed. In such case it becomes the master's duty to warn the servant of the particular or peculiar danger that attends the service. *Bailey Mas. & Ser.*, 112. Thus it is seen that the master's duty is commensurate with the servant's necessity in this regard, provided the master

knows, or should know, of the existence of the danger and of the servant's need of warning and instruction.

We have already indicated that before the duty arises it must appear that the master knew or ought to have known of the existence of the danger complained of. In case of injury in the operation of a machine such as a circular saw, the ordinary danger of which is obvious, something more must be shown than the fact that the machine by its unusual and unaccountable behavior upon a single occasion injured the plaintiff in a way that was not obvious. It must be shown that the master could, in the exercise of reasonable caution, have apprehended such an accident. *Carrington* v. *Mueller,* 65 N. J. L. 245, 47 Atl. 564.

We are of the opinion that on the evidence in the case viewed in the light most favorable to the plaintiff the court properly ruled that the plaintiff was entitled to go to the jury on the first count of the declaration. .It fairly appeared that the plaintiff's injury was occasioned by the jumping up or "bucking" of the board which he was sawing. The evidence tended to show that this was liable to happen without reference to any defect in the saw or saw-table, owing to the binding of the board on the saw; that this was a probable result in sawing a short board unless the spreader was used; that the danger was understood by the defendant's foreman who, as to the plaintiff, in this matter represented the defendant; that the plaintiff was ignorant of the particular danger; that the defendant's foreman should be taken to have known this fact; and that no warning of such danger, or instruction as to avoiding it, was given. While the evidence as to instructions and the necessity for their being given was conflicting, there being evidence, if believed, that would support a cause of action under this count of the declaration, it was for the jury to say what the facts were. By their verdict they have found these issues for the plaintiff. The court could not say, as matter of law, that. he must have known or ought to have known the particular danger which he encountered.

*Wheeler* v. *Wason Mfg. Co.,* 135 Mass. 294 and *Jarvis* v. *Coes Wrench Co.,* 177 Mass. 170, 58 N. E. 587, are much in point and merit special attention. In both cases the negligence charged was failure to caution and instruct the servant. In both the injury was caused by the wood which the servant was

sawing bounding back. The peculiar danger in both cases was the liability of the wood thus to spring back. In the former case it was held that while the general danger of coming in contact with the saw was plain, the master was bound to see that an inexperienced workman was warned of any peculiar danger such as that under consideration; that this duty could not be delegated; and that the master must be held responsible for an injury which occurred in consequence of his failure to see to it that a proper notice was given. In *Jarvis* v. *Coes Wrench Co.* defendant's foreman called as a witness by the plaintiff testified that he showed the plaintiff how to saw the blocks and where to put his hands on the block to shove it up to the saw; that he knew there was some danger if the block was not pressed squarely against the saw,—danger of its bucking or jumping back; that he didn't say anything to the plaintiff about this, though he spoke about danger but not any particular danger. The court said: "While it may be said that the plaintiff knew that there was some danger in working on a circular saw, yet he had no knowledge that there was danger of the piece of wood bounding back. This danger the jury may well have found was known to the defendant, and it was bound to see, before the plaintiff was set to work on the machine, that he was duly instructed on this point."

To the same effect is *Hanson* v. *Ludlow Mfg. Co.,* 162 Mass. 187, 38 N. E. 363, and *L'Hote* v. *Lumber Co.,* 203 Mass. 294, 89 N. E. 532.

It was urged as a further ground of the motion for a directed verdict that the plaintiff on the evidence as a matter of law, assumed the risk and so was barred of a recovery. Counsel do not disagree as to the rules of law applicable to the doctrine of assumption of risk. No branch of the law has been oftener reviewed by this Court in recent years and the law of the subject has long since ceased to be an open question. The difficulty has been, and doubtless will continue to be, in the application of these rules to the facts of the particular case. Herein lies such difficulty as there is on the question here, which is unusual in that under the count now being considered the risk complained of was inherent in the employment and the negligence was failure to warn and instruct with reference thereto. The important and, in the circumstances, controlling question is whether the doctrine of assumption of risk has any application to such

a situation as is presented in this case. The term "assumption of risk" is commonly employed both with reference to risks that inhere in the employment sometimes called ordinary risks, and to risks that exist through the negligence of the master, frequently called extraordinary risks. The double application of the term is liable to confuse unless one has in mind its real significance in the particular case. When applied to dangers inherent in the service existing without negligence on the part of the master, it signifies that the servant, as an incident of his employment, incurs the risks which he thus encounters, viz: the natural, ordinary and obvious risks incident to the employment. *Latremouille* v. *B. & R. R. Co.,* 63 Vt. 345, 22 Atl. 656. In that sense he assumes them, if he is of sufficient age and intelligence to understand the risk and its effect upon his safety. See *Wormwell* v. *M. C. R. Co.,* 79 Me. 397, 10 Atl. 49, 1 Am. St. Rep. 321. It expresses the idea that the master is not an insurer against damages resulting from risks that exist without negligence on his part. In case of injury resulting from such a risk, the servant is denied a recovery, not because he has assumed the risk, but because the master has not been guilty of a breach of duty.

When dealing with so called extraordinary risks a different situation is presented. When the negligence of the master is made to appear, then the doctrine of assumption of risk as a bar to the recovery comes into operation. If the servant, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is precluded from a recovery for an injury that results therefrom. By thus encountering the risk he is regarded as having excused the resulting injury under the maxim *volenti non fit injuria.* It is sometimes said that the master no longer owes him any duty, or that the increased or unusual danger becomes an incident of the service. It seems more logical to say that, while the master is not relieved of the duty owed the servant, it becomes one of imperfect obligation which is not recognized in law, following the interpretation of the maxim: "That to which a person assents is not esteemed in law an injury." See *Fitzgerald* v. *Conn. River Paper Co.,* 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537. While the result is the same the latter view does not regard the servant's voluntary assumption of the risk as excusing the duty, which has already attached, but leaves it

to excuse the liability to answer in damages therefor, which otherwise might subsequently attach. The term "injury" as used in the maxim is not synonymous with "damage." To constitute an injury in the sense there expressed there must be a violation of some legal right; while damage is the harm, detriment or loss sustained by reason of the injury. There are many cases in which a person may sustain actual damage without sustaining any legal injury. In such case the damage is *damnum absque injuria* and no cause of action arises against the party by whose act it was caused. 1 C. J. 965 and cases cited.

The risk that occasioned the plaintiff's injury, if incurred by one not entitled to caution and instruction, would be an ordinary risk of the service and so would be incurred as an incident thereof. Does the fact that the plaintiff was entitled to warning and instruction as to this risk change the character of the danger? If so, is there room for application of the doctrine of assumption of risk where the negligence claimed to be barred thereby consists in failure to warn and instruct concerning the very danger said to be assumed? If we regard the character of the danger as unchanged, the fact that it was an inherent hazard of the employment would not affect the plaintiff's right of recovery. When he entered upon the employment beset as it was with a latent danger inherent in the service, under circumstances that cast upon the defendant the duty to warn and instruct him with reference thereto, he did not in law, voluntarily undertake the risks of such danger. The nature of the danger and his ignorance of it make this impossible. If an ordinary danger, it was not incurred as an incident of the employment, because it was not obvious.

On the other hand, if we regard the danger in such circumstances as extraordinary, the presence of negligence on the part of the defendant in failing to warn and instruct the plaintiff excludes the idea of voluntary assumption of risk; for the knowledge and comprehension on the part of the plaintiff that would afford a basis for assumption of risk would, at the same time, excuse the defendant from its duty to warn and instruct. It is the absence of knowledge on the part of the servant that raises the duty on the part of the master.

It follows that the defendant was not in any view of the evidence, entitled to a peremptory instruction on the question

of assumption of risk and cannot complain of the action of the court in overruling his motion on that ground.

It remains to consider the last ground of the motion which raises the question of contributory negligence on the part of the plaintiff. We think it cannot be said that there was no evidence fairly and reasonably tending to show that the plaintiff was exercising due care for his own safety. Contributory negligence as a defence only applies when actionable negligence on the part of the defendant has otherwise been established. Like voluntary assumption of risk it bars the action, but for entirely different and well understood reasons. We must consider the question as it would stand with the defendant's negligence established.

A circular saw is everywhere recognized as one of the most dangerous machines in common use. At its best, it requires skill and experience to operate it with entire safety. It is obvious that placing the hands near a rapidly revolving saw is attended with some danger, but the operation of the saw makes it necessary to incur the dangers incident to its operation. Among these is the danger that the board may fly up without the fault of anyone. The plaintiff was not bound to protect himself from unknown concealed dangers. *Boyce* v. *Johnson,* 72 N. H. 41, 54 Atl. 707. Whether it was an act of imprudence for the plaintiff to use his hand as he did to guide the board would depend upon all the surrounding circumstances. He was ignorant that the board he was sawing might "buck" without any fault of his; he was unaware of the object of the guard attached to the saw; he was unacquainted with a certain safer method of managing the board to prevent its flying up, all through the negligence of the defendant. The evidence was conflicting as to what would be ordinary prudence in managing such a board as he was sawing. The defendant's foreman had testified without objection that, if the guard or spreader was not used, it was the safest way for the operator to do just as the plaintiff testified he was doing at the time of his injury; while another witness testified that the operator should never let his hand go past the front edge of the saw. In the circumstances it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. The question was one about which reasonable men might differ and so must go to the jury.

The defendant excepted, to the testimony by an expert on circular saws that if there was not sufficient "set" in the saw it would have a tendency to make the board jump up. The objection was that there was no allegation that the saw wasn't set right. This evidence was not received as a basis of negligence but evidently as an explanation of the behavior of the board which the plaintiff was sawing at the time of his injury. If the plaintiff was not complaining that the defendant was negligent in this matter, still it was permissible for him to account for the action of the board which he had alleged and this was one of the possible explanations. It was not error to receive this evidence.

Exceptions were taken to several statements made by plaintiff's counsel in the closing argument to the jury: (1) Counsel asked the jury in substance if they had noticed how many more law firms it took in this case to look after the rights of a corporation than to look after the rights of a boy. While this argument was not in good taste, we fail to see how the defendant could have been seriously prejudiced. The situation is very much like that in *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489, 503, 74 Atl. 108, 24 L. R. A. (N. S.) 128. The statement involved nothing not already observable by the jury. The court in allowing the exception remarked: "What consequence is it whether few or many lawyers are engaged in a controversy? The question for the jury is the truth of it, that is all there is to it." Counsel facetiously added that he was trying to use the language that one of defendant's attorneys, naming him, used in the case of *Marshall*·v. *Dalton Paper Co.* so as to get what he said grammatically correct, and concluded, "If they don't want me to use their language, gentlemen of the jury, I will withdraw it." We think the court's rebuke and the subsequent withdrawal cured any possible harm to the defendant. (2) Counsel said "Albert Carleton had worked around that saw but a few minutes,—I will leave it to you,— a few seconds a day for three weeks," which was objected to because "Carleton's own testimony was that he had worked about fifteen minutes a day." This could not possibly have harmed the defendant. The statement left the question of time to the jury. The objection brought to the attention of the jury how the plaintiff had testified on that subject. There was nothing in the argument calculated to mislead them in arriving at

a correct estimate of the time that the plaintiff had worked upon the saw. (3) The next exception was to the following statement of plaintiff's counsel: "Fair play! We have got a lot more of it in this case. This board that they were so honest in producing, this is fair play; compelled us to go to the court to get it—a sample of it." On an objection being interposed discussion followed in which plaintiff's counsel asserted that the remarks about "fair play" were in answer to a statement by defendant's counsel in argument concerning how fair they (defendant's counsel), were in producing the board, and the exceptions do not show to the contrary. We must presume this to be so: for it is incumbent upon the excepting party to show that the argument was not legitimate. *Fadden* v. *Mc-Kinney,* 87 Vt. 316, 89 Atl. 351. Nothing appears in the transcript, which is referred to and made controlling, concerning an application to the court for an order for the production of the board. The transcript shows that immediately after the jury was empanneled "Mr. Fairbanks produced board which he was notified to produce by plaintiff's counsel." During the colloquy over this matter Mr. Fairbanks admitted in the hearing of the jury that he refused to produce it just before the trial, and Mr. Dunnett stated that he had notice to produce it and did so in accordance with the notice. The only ground of objection to this argument appears at the close of the colloquy and was in substance that there was nothing in the record about any conversation on that matter, evidently referring to the demand and refusal to produce the board, and that it was not proper to comment on it to the jury. By allowing the exception the court impliedly ruled against the defendant's contention. If there is reversible error it is because the court permitted the statement to stand after what had taken place before the jury. Had the matter stood as at the time the objection was first interposed, it might be impossible to sustain the ruling. It would be error for counsel to state as a fact matters not in evidence before the jury. *Blaisdell et al.* v. *Davis,* 72 Vt. 295, 309, 48 Atl. 14. But the fact that furnished the real point of the statement was conceded; and though it came into the record in an informal manner, its presence there met the objection urged against the statement. We do not find reversible error in this incident. (4) Counsel for plaintiff, referring to the evidence as to the time when the plaintiff was

first put to work on the saw, said: "And when it is put right up to Mr. Corfield if he didn't tell me in my office that it was only a week, he is unable to state, but he says if he did tell me that, he is mistaken." Defendant objected because "Mr. Corfield said that he did not tell him that." The record shows that Corfield testified on this subject that he didn't remember as to making any such statement, but that if he did it was not true. This exception is without merit. The variation between the testimony and the statement is too trifling to afford any reasonable ground of objection. (5) Counsel for plaintiff made the further statement; "I know that those gentlemen within a very few seconds after this injury occurred were collecting things to bring into court in order to damn this boy." It was objected that there was no evidence that they were collecting things to bring into court, or thought about bringing into court. Plaintiff's counsel added: "They were collecting things that have been brought into court, I will say they were down there and picked up this board." The statement thus modified was supported by the testimony.

(6) After arguing that the marks on the guard or spreader showed that it was raised and lowered frequently, whereas witness Corfield had testified that it was not raised more than once a month, plaintiff's counsel continued: "Ah, they have got into a bad box. The marks on that machine stamp Mr. Corfield's testimony as absolutely false. And what do they do? My good man Noyes comes to the rescue." Then follows reference to Noyes' testimony tending to account for the marks. Defendant objected, saying: "He says Brother Noyes came to the rescue. We didn't put anyone on to come to the rescue. My brother himself asked Mr. Noyes whatever questions were asked about this and elicited what information was elicited for his own benefit and not for ours." The argument did not in terms impute any wrong to the defendant. If anyone was charged with making evidence, it was the witness himself. The jury were aware how the testimony came in and their recollection was refreshed by the objection. Standing thus it is fair to assume that the defendant was not prejudiced by any inference of wrongdoing. The jury had had an opportunity to form a judgment as to the witness' credibility; and, if they thought he was being unjustly criticized, the argument would harm the

plaintiff rather than the defendant. We do not find reversible error in this incident.

Numerous exceptions were taken to the charge of the court. Exceptions numbered 12, 14, 17, 19 and 20, related to questions arising under the second count of the declaration. As we have already indicated in speaking of the exception to the action of the court in permitting the plaintiff to go to the jury on the second count, these questions become immaterial in view of the special verdict establishing negligence under the first count. Error, if any should be found in relation to matters peculiar to the second count, would be harmless and so not reversible. The defendant excepted to the charge of the court that general instruction that plaintiff must look out and not get his fingers cut was insufficient, on the ground that, as applied to this case, that was all the instruction that was required. This question has been sufficiently considered in the discussion of the motion for a directed verdict. The exception cannot be sustained.

The defendant excepted "to the charge of the court because the fact that a stick would bind and fly up is a risk ordinarily incident to the operation of that sawing machine, and was assumed by the plaintiff, and there was no question to be submitted to the jury on that." This question is also disposed of in connection with the motion for a directed verdict. Besides it is an exception to the whole charge and for that reason is too general to be considered. *Graves* v. *Town of Waitsfield*, 81 Vt. 84, 94, 69 Atl. 137.

The defendant also excepted to the charge of the court in submitting to the jury to find whether plaintiff was injured by any unusual and extraordinary risk, because there was no evidence in the case tending to show that he was injured by any unusual or extraordinary risk. The exception does not indicate and defendant does not point out in his brief wherein the court submitted such a question to the jury. In their brief defendant's counsel say the ground of this exception is the same as that of the last preceding exception. That being so it follows that it should be disposed of in the same manner.

The defendant further excepted to the charge "because it does not contain instructions to the jury that the plaintiff is assumed to know that he must not put his hands in a position where they would be likely to get onto the saw." In their brief all the defendant's counsel say concerning this exception

is that the court did not charge upon this subject-matter and they refer us to the paragraph of their brief relating to contributory negligence as a ground of their motion for a directed verdict. The question is not sufficiently briefed to require attention. *Drown* v. *New England Tel. & Tel. Co. et al.*, 81 Vt. 358, 372, 70 Atl. 599. However, an examination of the charge discloses that the court charged fully on the subject of contributory negligence and in language satisfactory to the defendant, as no exception thereto was taken. Error in this regard is not made to appear.

Defendant's last exception was "to the charge of the court because there was no evidence in the case tending to show that the defendant didn't know at the time he was injured, at the time and before he was injured, that a stick was liable to fly up." The exception is to the whole charge; and neither below nor here is there any attempt to point out the particular portion of the charge complained of. All that is said in defendant's brief concerning this exception is that it is based on the same ground as defendant's motion to direct a verdict, to which we are referred. Waiving these objections, either of which would be fatal to the exception, the exception cannot be sustained on its merits. We need only to restate what has been said concerning the matter in disposing of the motion for a directed verdict. The plaintiff testified that he had never used a circular saw before; that he knew nothing about it; that he didn't receive any instructions from anyone with reference to the use of the saw; that he was merely told to be careful and not cut his fingers; that no board had ever before jumped the way this one did that he was sawing at the time of the injury. This evidence fairly tended to show that the plaintiff didn't know that the board was liable to fly up.

We have considered all of defendant's exceptions not specially waived or not waived by failure to brief.

*Judgment affirmed.*

*Watson*, J., concurs in the result.