DAVID FRASER *v.* A. C. BLANCHARD AND PATRICK CROWLEY.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed September 7, 1909.

*Master and Servant—Injuries to Servant—Assumed Risk—*
*Proximate Cause—Negligence—Questions for Jury—Mas-*
*ter's Duty—Safe Appliances—Transitory Risk—Scope of*
*Cross-Examination—Conduct of Counsel—Improper Ques-*
*tion—Action of Court—Sufficiency—Jury—Competency—*
*Formation of Opinion—Newspaper Reports.*

Although the transcript be made to control as to the tendency of the
evidence, yet the bill of exceptions will be followed in that
respect where there is no claim that it does not fairly disclose
such tendency.

The fact that the elements and combinations from which the danger
arises are obvious does not always make the danger so apparent
that the servant will be held as matter of law to comprehend and
assume the risk thereof, for the conditions may be recent and the
danger obscure, especially to an inexperienced workman, in which
cases the question of assumed risk is for the jury; but where the
dangerous conditions are constant, of long standing, obvious to
one of common intelligence, and the danger one that is suggested
by common knowledge, and the servant is mature, intelligent, and
experienced, the question of assumed risk is for the court.

In an action by a servant for injuries from the slipping of a derrick
mast that fell on him while he was assisting to raise it, and which
he claimed was not properly secured at the foot, evidence con-
sidered and *held* that the questions of assumed risk, of defendant's
negligence and whether that was the proximate cause of the in-
jury were for the jury.

The rule that a master's duty to use due care to provide safe appliances
does not extend to mere transitory risks was not applicable where
the side chains used to hold the foot of a derrick mast on the
ground while it was being raised were placed too high by the fore-

man, who, upon discovering it, stopped the raising of the mast, and directed plaintiff to remedy the defect.

Where the record does not show that a permitted question was answered error does not appear.

Where an expert witness testified in chief as to how a derrick should be raised, and what were the dangers in raising it in a certain manner, it was not error to exclude the cross-question whether such dangers were not discoverable to anyone.

In an action by a servant for injuries defendant's witness testified in chief to having been in plaintiff's house the first night after the accident, when defendant's foreman was there, and that plaintiff told the foreman that he did not blame anyone for the accident, the prejudicial effect of the cross-question whether the witness was there the night the foreman tried to get a settlement, of which there was no evidence, claimed to have been asked only to identify the time, was cured by the court immediately directing the jury to disregard any evidence of a settlement.

If the trial court believes that its direction to the jury not to consider evidence sought to be elicited by an improper and prejudicial question did not cure the harm, it should set aside the verdict; and while the objecting party should move to set aside the verdict against him, if he thought the court's direction did not cure the error, his failure to do so was not a waiver of his exception to the question.

The mere asking of an improper and prejudicial question which is not answered and which the court immediately directs the jury to disregard is not like admitting improper evidence which cannot be charged out, but is analogous to an offer of improper evidence that is excluded, which is rarely ground for reversal, though it may be if counsel persists in trying to get it before the jury.

The fact that two jurymen trying a case had read a newspaper article stating that the parties were trying to settle did not disqualify them where they had never formed or expressed an opinion thereon, nor if they had done so would it necessarily have disqualified them, since, to disqualify, the opinion must be based on substantial facts and permanently bias the mind.

On reargument, evidence further considered, and *held* that, though this Court erroneously stated in its opinion that plaintiff's evidence tended to show that, in order to hold the butt of the mast against the rim of the socket to keep it from slipping as it was being

raised, "it was necessary to fasten that end with a chain on either side, and to attach it to a third chain and hitch it to some suitable object to keep the mast from slipping endways, but that defendant had only one chain attached when the mast was being raised, and that a side chain," whereas the statement should have been that plaintiff's evidence tended to show that two side chains, *or* a chain to keep the mast from slipping endways, should have been used, the question of defendant's negligence was still for the jury.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1908, Washington County, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

After the opinion in this case was filed, a motion for reargument was made by the defendant, and publication was deferred pending reargument, which was had at the January Term, 1910.

*H. R. Bygrave* and *Richard A. Hoar* for the defendant.

The master has no duty to instruct the servant where the work and the manner of doing it can be comprehended by a man of ordinary intelligence, and the servant is such a man. *Reynolds* v. *B. & M. R. R.,* 64 Vt. 66; 4 Thompson Com., §4061; 1 Labatt, Master and Servant, §238; *Gleason* v. *Smith,* 172 Mass. 50; *Hathaway* v. *Mich. C. R. Co.,* 51 Mich. 253; *Collins* v. *Laconia Car Co.,* 68 N. H. 196.

The master's duty to use due care to furnish safe appliances does not extend to such transitory risks as the one here in question. *Lambert* v. *Missisquoi Pulp Co.,* 72 Vt. 278; *Garron* v. *Miller,* 72 Vt. 284; *McCann* v. *Kennedy,* 167 Mass. 23; *Whittaker* v. *Bent,* 167 Mass. 588.

*John W. Gordon* for the plaintiff.

ROWELL, C. J. This is case for negligence in not properly securing the foot of the mast of a derrick that the plaintiff was helping raise on the dump of defendant's quarry, by reason whereof the mast slipped and fell and injured him.

No copy of the declaration is furnished, but according to the defendants' brief it consists of two counts; one, that the plain-

tiff was ignorant of the work of raising a derrick, which the defendants well knew, and yet did not instruct him in it; the other, that the defendants did not furnish him a safe place in which to do the work, in that they did not properly secure the foot of the mast from slipping and the mast from falling.

Although the transcript is made to control as to the tendency of the evidence, yet as no claim is made that the bill of exceptions does not fairly disclose its tendency, we follow that, by which it appears that the testimony on the part of the plaintiff tended to show that he hired out to the defendants a few days before the accident to work for them in their quarry as boss derrickman, a business at which he had worked in different quarries in Barre for about a year; that the duties of such a boss were to assist in and oversee the hoisting and moving of stone and the clearing of refuse from the quarry; that the business of raising and lowering derricks was not within the scope of his employment, nor contemplated when he entered into it, but was a thing that he knew nothing about, and so informed the defendants; that he did not know how to raise a derrick with safety to himself; nor know nor appreciate the dangers connected therewith, and that the defendants gave him no instructions in respect thereto; that the defendant Crowley called him to help raise the derrick in question, in and about which work he was acting merely as a helper under the personal supervision and direction of Crowley, who was present, taking charge of the work and giving orders, which he and the others were obeying; that the derrick consisted of a mast and a boom, the mast being about thirty feet long and a foot in diameter at the butt and ten inches at the top; that the cast iron socket in which the foot of the mast was to rest was circular in form on the outside, and fastened to timbers that rested on the ground; that when the mast was in place for raising, the butt end was against the outside rim of the socket to keep it from slipping; that in order to hold it there, it was necessary to fasten that end with a chain on each side, and to attach to it a third chain and hitch it to some suitable object to keep the mast from slipping endways, but that Crowley had only one chain attached when the mast was being raised, and that a side chain.

The testimony on the part of the plaintiff further tended to show that when the mast was being raised, Crowley stopped it, and ordered the plaintiff to get some tackle blocks and go under it at a place about ten feet from the butt where the mast was five or six feet from the ground, and attach the blocks to a chain; that the plaintiff obeyed, and when under the mast to perform that work, it slipped endways because not properly fastened, and fell upon the plaintiff and severely injured him.

The testimony on the part of the plaintiff further tended to show that as boss derrickman he had nothing to do with hitching the chains at the foot of the mast, and had not sufficient experience, as the defendants knew, to enable him to determine when the foot of the mast was sufficiently secured.

The testimony on the part of the defendants tended to show that when Crowley hired the plaintiff he represented himself to be a boss derrickman and as understanding how to operate derricks; that he told him where he had worked, and how long he had worked in other quarries, and that Crowley spoke to him about taking down this very derrick, and he said he could do it; that what induced Crowley to hire him and agree to pay him as much as he did was because he told what a good man he was, and capable of taking down and erecting the derrick in question all right; that Crowley had had no experience in raising and handling derricks, and wanted to hire a man capable of taking down and setting up this derrick; that the day before the accident, Crowley put the plaintiff in full charge of taking down and setting up this derrick; that the plaintiff had the entire charge of the work, and that although Crowley was in general charge of the quarry, he took no charge of this particular work, and gave the plaintiff no orders as to how the derrick should be taken down nor set up, nor how to attach the chains nor the tackle blocks; that the plaintiff took down the derrick and moved it to the place where it was to be set up and attached the necessary chains the day before the accident; that on the day of the accident the side chains were placed too high up from the butt of the mast, and attached to large stones on either side of the mast to keep the foot of it against the socket and foundation so it would not slide sideways when being raised; that when the top of the mast was raised twelve or fifteen feet from the ground it was discovered that the side chains were too tight, whereupon the plaintiff

stopped the engine and went for some tackle blocks, took off one of the side chains and hitched on one of the pulley blocks and then took the block and went up the dump to hitch it to another chain that he had put around a big stone the day before to draw the mast up by, and when he was in the act of thus attaching the block, Crowley warned him of the danger; that the derrick shot straight ahead towards the engine house; that Crowley gave the plaintiff no directions to go under the mast to attach the block to the chain around the big stone, but told him to keep out of there for it was dangerous; and that whatever the plaintiff was doing at the time of the injury was done of his own accord.

The defendants claimed that all the testimony showed that the chains were in plain sight, and that with the exercise of due care the plaintiff could have seen and ascertained the condition and situation of everything connected with the work.

The defendants moved for a verdict for that there was no evidence of negligence on their part, and none of due care on the plaintiff's part; that the plaintiff knew and understood, or in the exercise of due care could have known and understood, all the risks and dangers incident to the work he was doing at the time of the injury, and therefore assumed them as matter of law; that his evidence failed to show any causal connection between the negligence of the defendants, if any there was, and the injury received; and that a verdict for the plaintiff would have to be set aside as against the evidence and the weight of evidence.

As to there being no evidence of negligence on the part of the defendants, it is claimed that they were not bound to instruct the plaintiff, because the work he was doing and the manner in which it was being done were so obvious that he must be taken to have known and comprehended the danger of it. But though the elements and combinations out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the servant must be taken as matter of law to comprehend and assume the risk of it. The visible conditions may be of recent origin, and the danger arising from them obscure, especially to one not acquainted with the work. In cases of that class, to which this case belongs, the question of assumption of risk is for the jury. But if the conditions are constant and of long standing, and the danger is one that is suggested by the

common knowledge of all, and both the conditions and the dangers are obvious to the common understanding, and the servant is of full age, intelligent, and of adequate experience, and these elements appear without contradiction, the question becomes one of law for the court. *Butler* v. *Frazee,* 211 U. S. 459, 54 L. ed., 29 Sup. Ct. 136.

The claim that there was no evidence of due care on the part of the plaintiff is largely based on the same ground as the claim that there was no evidence of negligence on the part of the defendants, namely, that every thing about the work was so visible that the plaintiff could have seen and comprehended the danger if he had exercised due care, and that the fact that he was hurt shows conclusively that he did not exercise due care. But what we have said on the assumption of risk is applicable here, and this claim is not sustained.

As to the failure of the defendants properly to secure the foot of the mast, it is claimed that it is apparent from the evidence that the unfastening of the side chain was merely temporary, a transitory part of the work, and that the absolute duty of the master to see that due care is used to provide safe appliances does not extend to all the passing risks that arise from short lived causes. But such risks are those that naturally arise in the due prosecution of the work, as is shown by the cases to which the defendants refer. Thus, in *McCann* v. *Kennedy,* 167 Mass. 23, 44 N. E. 1055, the plaintiff fell and was injured by stepping on a joist that had just been sawed nearly off for the purpose of making a well-hole in a house that was being repaired. He knew that the customary way of making such holes was to lay the joists and then cut them out, and knew where the hole would be. The only ground on which he could recover was, that while the joist remained it was a trap, and that he ought to have been warned. But the court said that the danger was momentary, and that it would be impracticable to require the master to warn his servant of every such transitory risk when the only thing the servant did not know was the precise time when the danger would exist. *Whittaker* v. *Bent,* 167 Mass. 588. 46 N. E. 121, also referred to by the defendants, is to the same effect.

But here the risk did not so arise, but arose through the fault of the defendants, for Crowley himself testified that the side chains were placed too high up from the butt of the mast,

and that when the top of the mast was lifted, that was discovered, whereupon the plaintiff stopped the mast and took off one of the side chains, but the plaintiff's testimony tended to show that the chains were thus placed under Crowley's directions and not under his, and that Crowley stopped the mast and not he. So the rule invoked does not apply here, and it must be said that there was evidence of negligence on the part of the defendants, for Crowley's testimony was to the effect that the danger was created by taking off the chain, and that he warned the plaintiff of the danger.

In support of the claim that the evidence fails to show any causal connection between the defendants' negligence and the plaintiff's injury, it is argued that the lack of instructions had nothing to do with the fall of the mast, for it does not appear that because of such lack the plaintiff did or omitted to do anything that contributed to its fall; and that assuming that the unfastening of the chain satisfies the allegation of negligence, still it must appear with reasonable certainty that the lack of that fastening caused the mast to fall, and that it does not so appear, but appears that with the exception of Crowley, every witness who testified on the subject said he did not know why nor how the mast fell, and that the closest description given was that the whole thing shot forward in the direction of the socket, and did not slip sideways, and that therefore there was nothing but speculation to show that the absence of the side chain caused the fall. But that is not all there is of the testimony, for the plaintiff's tended to show that in order to keep the butt of the mast from slipping off the outside rim of the socket, it was necessary to fasten it with two side chains to hold it in place, and also to attach a third chain to it, and hitch it to some suitable object, to keep the mast from slipping endways, which was not done. This omission, the jury might well say, accounted for the mast's slipping endways instead of sideways, if such was the fact.

The plaintiff asked one of his witnesses if he had been employed by the defendants to look up witnesses, to which the defendants excepted. It does not appear that the question was answered. This is all the bill of exceptions shows, and we are referred to nothing in the transcript for anything more. It is enough to say of this exception that error does not appear.

One of plaintiff's witnesses who had testified as an expert how a derrick should be raised and what the dangers were in raising one in the way undertaken in this case, was asked on cross-examination if such dangers were not discoverable to any one. The question was excluded. The defendants insist that that was error, for that if the witness was competent to testify as an expert what the dangers were, it was an improper limitation of the cross-examination to prevent eliciting from him the fact that the dangers were obvious, as that question was very material to the issue. But that was a thing dehors the matters of the examination in chief, and so not a proper subject of cross-examination.

One of the defendant's witnesses testified in chief to being at the plaintiff's house the first night after the accident when Crowley and others were there, and that the plaintiff then told him that he did not blame anybody but himself, for Crowley told him not to go in there. On cross-examination he was asked if he was there the night Crowley was there trying to get a settlement with the plaintiff, and he said he was not. This was excepted to, whereupon the cross-examiner said he was trying to identify the time. Thereupon the court said that the jury would disregard any reference to settlement, that it was not to be considered in any way affecting the rights of the parties. But neither the bill of exceptions nor the transcript discloses any excuse, much less any justification, for asking the question, and the only thing for consideration is whether the court dealt with the offence sufficiently to cure the mischief. We said in *Smith Woolen Machine Co.* v. *Holden,* 73 Vt. 396, 403, 51 Atl. 2, that the great weight of authority holds that the mischief of such a thing is cured when the offending counsel withdraws what he has said or done or the court at once rules out the objectionable matter and instructs the jury not to consider it; but that if, after all, the court thinks the mischief is not sufficiently cured to insure the verdict against its taint, it would be its duty to set it aside, and on such terms as would be just. This is a salutary rule, and ought to be vigorously applied by the trial court, for it is obviously much better that the mischief should be cured there rather than dealt with here, and in this case a majority of the court thinks the mischief was cured by the timely and efficient action of the court. And it is fair to pre-

sume that the court thought so, for otherwise it would have been its duty to set the verdict aside, which it did not do. And so of defendants' counsel, for otherwise they should have moved to set the verdict aside, as said in *Lockwood* v. *Fletcher,* 74 Vt. 72, 52 Atl. 119. But they did not waive their exception by not doing so.

This is not like the admission of improper evidence that cannot be charged out. It is more like an offer of improper evidence that is not let in, which rarely vitiates, though it will sometimes, as it did in *Rudd* v. *Rounds,* 64 Vt. 432, 25 Atl. 438, where the persistent efforts of the plaintiff's attorney to place before the jury the contents of a letter that had been excluded were characterized as "very reprehensible"; and because it was allowed, it was held to be reversible error, curable only by showing that the letter was admissible, which was not done.

Before the charge, counsel for the defendants called the attention of the court to an article in a daily paper published in the city, which stated that the parties were trying to settle the case. Counsel moved that the jury be discharged and the case continued, but said they did not want the court to inquire then whether any of them had read the article, and the court did not inquire, but overruled the motion, saying that as it did not appear that any of them knew about the article, it would not be warranted in discharging them. When the verdict was returned, the court inquired of the jury and learned that two of them had read the article, but that nothing was said about it in their deliberations. Thereupon the defendants moved to set aside the verdict as against the evidence and the weight of evidence, and for that some of the jurymen had read the article. The first ground of the motion has virtually been disposed of in another connection. As to the second ground, the court said that as the matter came to the notice of counsel during the trial, it thought that the course they took then was such as to waive their right to raise the question after verdict; but whether that was so or not, that the court could not see that the verdict was in any way affected by what the jurymen read, and so overruled the motion, and rightly, we think, for it does not appear that the jurymen even formed an opinion about the case from reading the article, much less expressed one; and if they had done both, it would not necessarily have disqualified them, as shown by *State* v. *Meaker,*

54 Vt. 112, where it is said that the opinion, in order to dis-
qualify, must be an abiding bias of the mind, based upon sub-
stantial facts in the case, in the existence of which the juror
believes, and that the character of the opinion must be left
largely to the determination of the trial court upon the evidence
adduced.

So in *Reynolds* v. *United States,* 98 U. S. 145, 25 L. ed. 244,
it is said that in these days of newspaper enterprise and universal
education, every case of public interest is almost sure to be
brought to the attention of all the intelligent people in the
vicinity, and that scarcely any one can be found among those
best fitted for jurors who has not read or heard about the case
and has not some impression or opinion as to its merits; that it
is clear, therefore, that on trial of the issue of fact raised by a
challenge for such cause, the court will practically be called
upon to determine whether the nature and strength of the
opinion formed are such as, in law, necessarily to raise the pre-
sumption of partiality; that the affirmative of that issue is upon
the challenger, and the question presented one of mixed law and
fact, to be determined as to the facts like any other issue of fact,
upon the evidence; and that the finding of the trial court upon
that issue ought not to be set aside by the reviewing court unless
error is so apparent that the law would leave nothing to the
"conscience or discretion" of the trial court.   See, also, *Spies* v.
*Illinois,* 123 U. S. 131, 179, 31 L. ed. 80, 8. Sup. Ct. 22.

*Judgment affirmed.*

---

The judgment in this case was entered in vacation.   At the
October term the defendants filed a motion for reargument on
several points.   It was sustained as to only one, that of the de-
fendants' negligence; and on that, reargument was had at the
January term.   It is now pointed out and shown that we erred
in saying in the opinion, as we did, that the testimony on the
part of the plaintiff tended to show that in order to hold the
butt of the mast against the outside rim of the socket to keep it
from slipping, "it was necessary to fasten that end with a chain
on either side, and to attach to it a third chain and hitch it to
some suitable object to keep the mast from slipping endways,

but that Crowley had only one chain attached when the mast was being raised, and that a side chain.'' Counsel agree that if we had said that the plaintiff's testimony tended to show that two side chains, *or* a chain to keep the mast from slipping endways, should have been used, it would have been correct, and that is true.

The defendants now claim, this error being seen, that there is no evidence of actionable negligence on their part, in proof of which they vouch the transcript, and select therefrom all the testimony they think material to the question. It is not, of course, necessary to consider all the testimony, for it is not a question of the weight of evidence, but only of its tendency; and if there is some evidence tending to show such negligence, it was enough to carry that question to the jury; and that there is some, is reasonably clear, we think, for the plaintiff testified that he had nothing to do with hitching the side chains, but that Crowley was doing that and directing the men who were helping him; that after the men were sent to the ends of the guys, Crowley gave directions for hoisting the mast, and when it was up ten or twelve feet, Crowley directed it stopped, and directed him to signal the engineer to stop, as there was a chain loose, and he signaled, and then Crowley went in and fixed the chain, and sent him for a set of tackle-blocks, and told him to hitch them on there to the foot of the derrick; that he went and got them, and then went in under the mast within some two or three feet from the foot of it, to hitch the blocks to a chain there was in there, as Crowley had told him, but that he did not hitch them on; that Crowley said there was some slack in that chain, meaning, as the plaintiff understood, the chain they pulled on the day before when they were pulling up the derrick, and which was then hitched to a big stone back quite a ways up under the derrick, but not hitched to the derrick itself in any way; that after making some remark to Crowley about the chain, he tried to straighten up to get out of there, as he thought there was some danger when Crowley spoke about it, but before he could straighten up the stick came down and struck him on his hand, which was lying across the stone somewhere; that as near as he could tell, he was about half straightened up, with his hand on the stone, trying to straighten up, when the stick struck him; and that neither Crowley nor anyone else gave any warning of danger before nor after he went in there.

On cross-examination he was asked if he did not know that he was twelve or fifteen feet further up under the mast where a chain was fastened to a big stone near the middle of the mast, and was pulling a block up there to fasten to that chain and he answered that he was going to hitch the pulleys to some chain that was hitched on there. He further testified that when he got up there, Crowley said there was some slack there, but that he did not reply that there was none, nor say that it would be all right to fasten the block on there, nor try to fasten it on there right after that, but dropped the block and started; that most likely Crowley told him about the slack, to warn him of the danger; and when asked if Crowley was not doing everything in his power to prevent his getting hurt, he replied that he did not have time to get out of there. He also said that he saw the side chain on when they were raising the mast, but whether he knew that one was taken off is left to inference for aught we can find, and plaintiff's counsel says there is no evidence of it, while defendants' counsel say that the plaintiff does not deny such knowledge, and does not deny the only logical conclusion to be drawn from the situation shown to exist, namely, that the plaintiff himself removed the chain. But this was a question for the jury.

Crowley says that when McWhirt came back from the guy, one of the side chains was off. McWhirt says he came back from the guy "like enough" fifteen minutes before the accident. Crowley says he came back from the engine-house not more than five minutes before the accident, and found one of the side chains off. He says that the chains were hitched too high on the mast, and were getting so tight that it looked to him as though they would break, and that he told the plaintiff he better lower the mast; that thereupon the plaintiff stopped the engine, and said he would get a pair of tackle-blocks and take off one of the side chains and hitch back to another chain, which he said was all right, as they put it on the day before to draw the stick up by; that when the plaintiff went for the blocks, he himself went to the engine-house and told the engineer not to start the engine till he got orders, and then to be very careful to start slow; that he went back to the dump in about ten minutes, and found McWhirt near the foot of the derrick; that they had taken off one of the side chains and hitched one to the pulley

blocks, and that the plaintiff was, perhaps, twelve or fifteen feet up the mast, getting ready to hitch the blocks to another chain he had put around a big stone the day before to draw the mast up by; that the plaintiff was in under the mast, and he asked him if he did not know there was a lot of slack under that stone, and told him to come out of there, for it was not safe in there; that the plaintiff said the chain was all right; that they put it there the day before to haul the stick up with, and pulled hard, and it was all right, and with that he reached out his hand to attach the pulley blocks, being down on his knees with his hand resting on the stone, and the moment he hooked on to the chain the slack under the stone took up and the whole thing shot ahead. Crowley further testified that the other end of the chain around this big stone was hitched around the blocking at the foot of the mast to which the iron socket was fastened.

The defendants say in their brief that the condition that made the accident possible was, that the mast was left suspended in the air with only one side chain on the butt, and they say that the plaintiff was to blame for that, and exonerate themselves. But who was to blame for that, was an important question in the case on which the testimony was conflicting, and so was for the jury. Crowley admits that he knew one chain was off shortly before the accident, and he may have known it sooner than he admits, for he knew that the mast was stopped for a reason that involved, it would seem, taking off one or both of the chains and readjusting them, or of adopting some other means to secure the foot of the mast; and if he was in charge of the work, as the plaintiff's evidence tended to show, it might well be found that he knew about it from the first. He knew and comprehended the danger created by one chain's being off, for he says he saw it and warned the plaintiff. But it is argued that the plaintiff did not nor would heed the warning, but stayed and argued with Crowley, whereas if he had not delayed and tried to hitch to the chain, as Crowley says he did, but had hasted out as he might, he would have escaped injury. But the plaintiff denies pretty much all Crowley says about it; denies that he stayed and argued and tried to hitch on; but says that he dropped the block and started, and tried to get out but had not time.

Now when we remember, as said in the opinion, that the plaintiff's evidence tended to. show that the business

of raising and lowering derricks was not within the scope of his employment, nor contemplated when he entered into it, but was a thing that he knew nothing about, and so informed the defendants; that he did not know how to raise a derrick with safety to himself, nor know nor appreciate the dangers connected therewith; and had not sufficient experience, as the defendants well knew, to enable him to determine when the foot of the mast was sufficiently secured; and when we remember that his evidence further tended to show that in and about the work in hand he was acting merely as a helper under the personal supervision and direction of Crowley, who was present, taking charge of the work and giving orders, which he and the others were obeying,—it is manifest that whether he exercised the requisite care and haste to protect himself from injury was a question for the jury.

It is further said that according to the plaintiff's own story he was not doing what Crowley told him to do, for he says that Crowley told him to hitch the tackle-blocks to a chain at the foot of the mast, whereas he was trying to hitch them to a chain about midway of the mast, which was not the chain he says Crowley told him to hitch to. But that cannot be said, for though there is some uncertainty in the plaintiff's testimony on this point, yet it is capable of being construed to mean that that was the chain to which he says Crowley told him to hitch, and the uncertainty arises largely from his saying that he went in under the mast two or three feet from the foot of it, whereas he was, in fact, in some twelve or fifteen feet from the foot. But the more he was pressed as to the distance, the more uncertain he was, but he says he was in where Crowley told him to go, and all agree, he with the rest, that he was in at the big stone. So whether he was doing what he says Crowley told him to do, was also a question for the jury.

The defendants make some suggestions as to the law of the case. But as it is considered that there is nothing in the case as now presented that alters the legal aspect of it as before presented, the law then declared and applied must govern now.

*The defendants' proposition that there is no evidence of actionable negligence on their part not being sustained, the judgment must stand affirmed, and it is so ordered.*