W. E. WHITMAN ET UX. *v.* C. E. LOWE.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1924.

Trespass—Sufficiency of Evidence to Connect Defendant with Cutting Timber—Liability for Cutting Timber Not Excused By Reason of Acting Under Direction of Another—Effect of Instructions of Agent of Purchaser of Timber to Defendant's Subcontractor as to Cutting—Sufficiency of Evidence to Show Cutting on Disputed Land—Boundaries—Recognition of Boundary By Proprietor Not in Chain of Title Immaterial—Record of Motion to Set Aside Verdict Not Showing Grounds Presents Nothing for Review—When Rule That Monuments Govern in Preference to Courses and Distances Is Inapplicable—Exception to Charge Must Be Definite—Sufficiency of Evidence to Show Benefit From Unauthorized Cutting of Timber—Requested Instructions As to Effect of Supposed Agreement between Plaintiffs' Predecessor in Title Properly Refused—Requested Instructions Relating to Inadmissibility of Statement Connected with Attempted Compromise Properly Refused—In Trespass for Cutting Timber, Burden of Showing Claimed Mistake on Defendant—To Maintain Error in Admission of Evidence Record Must Show It Was Received Under Exception — Witnesses — Cross-Examination — Estoppel—Claiming Less Than at Former Trial—Evidence of Directions by Agent of Purchaser of Timber to Defendant's Subcontractor re Cutting Does Not Tend to Show That Defendant Did Not

*Also Give Directions—Argument of Counsel—Burden on Excepting Party to Show Argument Not Legitimate.*

1. In action of trespass by cutting timber evidence *held* to show that defendant aided, advised, and countenanced cutting of timber on the disputed land.

2. In such action, defendant was not relieved from liability for cutting timber on disputed land by the fact that what he did and the directions he gave were at the request and according to the direction of the company to whom he had sold the timber.

3. In such action, the fact that an agent for the company to whom defendant had sold the timber also gave orders to the person defendant had hired to cut the timber on the disputed land, was not available for his defense, as it did not relieve him from liability as principal.

4. In such action, evidence *held* to clearly tend to show that all of trees were cut on land in dispute, and afforded evidence on which jury could determine amount cut and assess damages.

5. Mutual recognition of a boundary line by an adjoining proprietor, who was not in the chain of title of land in controversy, is immaterial.

6. Where the record fails to show grounds of motion to set verdict aside, there is nothing for the Supreme Court to review.

7. Where the conflict as to a lot line was not between courses and distances, and monuments, but was in respect to the location of the line on the ground by different objects as described by witnesses, the trial court properly refused a request to instruct jury that in establishing the lot line monuments govern in preference to courses and distances.

8. Exception to the court's charge will not be considered, where the excepting party failed to point out in his brief the particular language objected to, and where the record did not show that such language was called to the court's attention, or that the grounds of error insisted upon were definitely called to the court's attention.

9. In an action of trespass by cutting timber, where defendant excepted to the court's charge referring to defendant's liability if he took the benefit of any of the cuttings, on the ground that the charge was without evidence to support it, *held* that the evidence tended to show that defendant had received such benefit, and that the exception was unavailing.

10. In such action, a requested instruction, based upon a supposed agreement between plaintiffs' predecessor in title and other lot owners as to the true boundary line, *held* properly refused under the evidence.

11. In such action, refusal of the court to give defendant's requested instruction that, if plaintiff and defendant after the cutting complained of, went with a surveyor on the land and ran the lines for the purpose of trying to compromise and settle their differences, statements connected with such survey were not evidence and should not be considered by the jury, was properly refused, the evidence showing that the controversy then attempted to be settled was not between plaintiff and defendant, but between plaintiff and defendant's grantor.

12. In action of trespass for cutting timber under G. L. 6956, burden of showing that in cutting such timber he acted through mistake and unintentionally was on the defendant.

13. Admission of evidence will not be held to constitute error, where record fails to show that such evidence was received under exception.

14. On cross-examination, where answer to a question could neither explain nor throw light upon any issue being tried, the question was properly excluded.

15. In an action of trespass, by cutting timber, exception to the admission of engineer's plan for the plaintiffs, on the grounds that they were making a different claim than on the first trial, and should be estopped therefrom, was without merit, where it appeared from the plan that plaintiffs were claiming for cutting upon a portion only of the land claimed at the previous trial, the doctrine of estoppel not preventing plaintiffs from claiming less than previously, and it not appearing that the changed claim in any way prejudiced the rights of defendant.

16. In such action, defendant's offer to show that the agent of the company to whom defendant sold the timber directed defendant's subcontractor to go ahead and cut as far as they did, and also directed manner of cutting, was properly excluded, as in no way tending to show that defendant gave no such directions.

17. Argument of plaintiffs' counsel that defendant was the only one giving evidence that he didn't go over the boundary line, and as to the inferences proper to be drawn from the testimony of

a witness, as to the number of trees cut *held* proper in view of the claims of defendant as to the conclusions which must be drawn from such witness's testimony.

18. Burden of making record show that argument is not legitimate is on the excepting party.

ACTION OF TRESPASS under G. L. 6956 to recover treble damages for cutting timber on plaintiffs' land. Plea, general issue. Trial by jury at the September Term, 1922, Washington County, *Fish*, J., presiding. General verdict fixing actual damages, and special verdict that defendant in doing cutting did not act under an honest mistake or have good reason to believe that he had a right to cut the timber in question. Judgment for plaintiffs, assessing treble damages. The defendant excepted. The opinion states the case. *Affirmed.*

*Edward H. Deavitt* and *Fred L. Laird* for the defendant.

*H. C. Shurtleff* for the plaintiffs.

BUTLER, J. The complaint is tort, under G. L. 6956, for the recovery of treble damages for cutting timber. Trial by jury, verdict for plaintiffs for $181.00 actual damages. By a special verdict the jury failed to find that defendant acted through mistake or had good reason to believe that he had a right to cut the timber in question. Judgment on verdict for treble damages.

The case comes here on exception by defendant to the overruling of his motion for a directed verdict, to the refusal of the court to set aside the verdict, to the charge of the court, to the admission and exclusion of evidence taken during the trial, and to the argument of counsel. The case has once been in this Court, and is reported in 95 Vt. 454, 115 Atl. 559, where the facts, so far as the questions then involved were concerned, were correctly stated, and need not here be repeated.

The parties now concede that the location of the southwest corner of the plaintiffs' farm is a spotted birch tree, near a stone pile at the southeast corner of the Ladd lot, as was claimed by the defendant at the former trial, instead of the spruce tree near a stone pile some 98 feet southerly, thus showing a jog in the range line as then claimed by plaintiffs. But the plaintiffs now

contend that their south line, whether the range line or not, is a straight line running easterly from said spotted birch to the southwest corner of the Ducker and northwest corner of the Senter lot, and that this line would pass through the beech tree spotted on four sides, standing in the north and south line of the Dailey and Ice Company's land.

The defendant claims title northerly to the Chapin line, so-called, which his testimony tended to show ran from the spotted birch, the now conceded southwest corner of plaintiffs' farm, easterly on a course south 49° east along a line of marked trees reaching a point fifty feet northerly of the spotted beech tree. The land now in dispute, therefore, instead of being substantially rectangular, as claimed by plaintiffs at the former trial, is a triangular piece fifty feet wide at the easterly end, to the south line of which plaintiffs claim title, while the defendant claims title to the north line thereof. Plaintiffs own the land northerly, and one Dailey the land southerly of this triangular piece, and it is on this piece of land that it is claimed the trespass was committed by defendant in cutting the timber.

Defendant states in his motion for a directed verdict five distinct grounds, and we will consider them in the order, as briefed by the parties:

[1-3] 1. (a) That there was no evidence that the defendant directed the cutting or had anything to do about it. It appeared that the defendant bought of Dailey the standing timber on the westerly half of lot 41, called the Dailey lot, situated south of lot 54, owned by plaintiffs as above stated, that he let the job of cutting and skidding all of the timber thereon to John H. Lyon and one Drinkwater, and that they did the cutting under their contract with defendant. Lyon was improved as a witness by plaintiffs, and testified that he cut the timber under the direction of defendant as far north as the Chapin line as indicated by marked trees; that he found no other line marked across the lot where he was chopping until he got to the line of marked trees; that before he had cut up as far as the disputed land, plantiffs notified him to stop cutting any nearer their line, and he did so, but subsequently continued the cutting under the direction of defendant to cut to the Chapin line. Besides defendant admitted in his testimony that he afterwards gave directions to Lyon from time to time while he was cutting on the disputed land. It is contended by defendant that

subsequent to engaging Lyon he sold the stumpage to the Parker-Young Company at a certain price per thousand feet, delivered f. o. b. Montpelier, and thereafter worked for that company at a certain price per week; that whatever directions he gave Lyon while cutting on the disputed territory was as an employee of the Parker-Young Company; that during all the time Lyon was cutting on the disputed land, defendant was employed in getting off, marketing, and delivering the lumber as an employee, and under the direction of that company, and paid Lyon with checks of that company; that one Smith was acting for the company, and directed Lyon as to the cutting on the disputed land.

The evidence clearly tended to show that the defendant aided, advised, and countenanced the cutting on the disputed land, and was to be paid for the lumber when cut, according to the amount cut, when delivered at Montpelier. That what he did and the directions he gave, was done at the request and according to the direction of the Parker-Young Company, would not relieve him from liability. *Adams* v. *Cook,* 91 Vt. 281, 100 Atl. 42; *Mack* v. *Kelsey,* 61 Vt. 399, 17 Atl. 780. Nor would the fact, as claimed by the defendant, that one Smith, acting for the Parker-Young Company, also gave orders to Lyon to proceed with the cutting, be available to defendant, since he would nevertheless be liable as principal.

[4]  (b) The second, third, and fourth grounds may be considered together, and they are in effect that there was no evidence of the amount of the timber cut on this particular piece of land on which the jury could intelligently assess the damages, or determine the amount so cut; because the uncontradicted evidence shows that the trees counted included those cut from the rectangular piece of land, as claimed by plaintiffs in the previous trial. Witness Davis testified that he went on to the lot with plaintiffs and one Crozier, measured the stumps, and estimated the timber cut; that Whitman pointed out to him the (Wheeler) line and the beech tree marked on four sides, hereinbefore referred to, and that they measured the stumps northerly 50 or 60 feet to the standing timber and found 48 soft wood and 17 hard wood trees cut, giving the dimensions. Whitman testified that no stumps were measured south of the Wheeler line. This line ran from the conceded southwest corner of plaintiff's farm easterly about 15 feet north of the spotted beech tree above mentioned. Thus the cutting would be all on the triangular

piece. The fact that Davis, as claimed by defendant, testified that the piece of land on which he measured the stumps had four sides and was not a triangle, as he recalled, affects the weight of testimony only. The evidence clearly tended to show that all of the trees counted were cut northerly of the Wheeler line, and so were on the land in dispute. The motion on the grounds stated was properly denied.

[5]    (c) The fifth ground of the motion is that the undisputed evidence shows that in 1907 and 1908, one Wiggins, who then owned the Whitman farm, had a survey made by one Chapin, going on the westerly side of his farm down to a stone pile near the birch tree which was marked on four sides, then turning at a right angle and going easterly and across the lot; that the representative of lot 41, Mr. Parmenter, was there, and that the line was agreed upon as the line, and Wiggins, having accepted this line, his grantees thereafter would be bound by it.

But no such agreement was established. Chapin, when he ran this line easterly across lot 54, was in the employ of Wiggins, who was having his west line run out to enable him to sell the Ladd lot. One Culver then owned the westerly half of lot 41, now known as the Dailey lot. The Ice Company owned the easterly half only. Parmenter was present, but he did not represent the whole of lot 41. He represented the Ice Company. Culver was not present or represented. Whatever the agreement was with Parmenter, to be effective as to the line of the Dailey lot, the owner of that lot must have been a party to it. Mutual recognition of the line by an adjoining proprietor who was not in the chain of title of the land in controversy is immaterial. *Silsby* v. *Kinsley*, 89 Vt. 263, 95 Atl. 634; *Vermont Marble Company* v. *Eastman*, 91 Vt. 460, 101 Atl. 151.

[6]    The defendant briefs a motion to set the verdict aside, but it is enough to say that the record fails to show the grounds of the motion without which there is nothing before us to review.

[7]    2.    (a) The defendant excepted to the failure of the court to charge that in establishing a line, lot line, as appears in this case, monuments govern in preference to courses and distances. That the old monuments there should be used to fix the line in preference to lines fixed on courses and distances.

This is not a case involving the construction of a deed where monuments conflict with courses and distances, but involves rather the identification of the true line by witnesses, by the

establishment of the existence of monuments. If the deeds had described a particular monument as being in the range line, or line between land of plaintiffs and defendant, and that monument was established and the line as run by courses was in conflict with it, there might have been a basis for this exception, but no such question was here involved. There was no conflict at this trial between courses and distances, and monuments; the conflict was in respect to the location of the line on the ground by means of different objects as described by witnesses. *Whitman et ux.* v. *Dailey & Lane,* 95 Vt. 454, 115 Atl. 559.

[8]   (b) The defendant excepted to the charge of the court on the matter of settlement, and the declaration and statements made therein as being evidence in any event. But the particular language objected to is not pointed out in his brief, nor does it appear from the record that it was called to the attention of the court, nor in taking this exception were the grounds now insisted upon called to the attention of the trial court with sufficient definiteness to be available.

[9]   (c) The defendant excepted to that portion of the charge which refers to the liability of the defendant, if he took the benefit of any of the cutting, for the reason that there was no evidence that he did take any benefit from it, but this claim is contrary to the fact. The uncontraverted evidence tended to show, that by the sale of the timber to Parker-Young Company at a certain price per thousand feet, he would derive a benefit from any and all timber delivered from the disputed territory at Montpelier. It would be no less a benefit to defendant that the Parker-Young Company had not settled with him and paid for the lumber, as his evidence tended to show.

[10]   (d) Exceptions were taken to the failure of the court to charge as requested by defendant in his request No. 1, as there was evidence that the other lot owners were present when Chapin surveyed the line for Wiggins on the southerly side of lot 54. This request relates to the supposed agreement between Wiggins and the other lot owners as to the true line at the time Chapin ran the west line of the then Wiggins farm in 1907, but for the reasons pointed out in disposing of the fifth ground of defendant's motion for a directed verdict, the request was properly denied.

[11]   (e) Exceptions were taken to the failure of the court to charge as requested in his request No. 2, which was as follows:

"If the defendant Lowe and the plaintiff Whitman, after the cutting complained of had taken place, went with Surveyor Wheeler on the land and ran the lines for the purpose of trying to compromise and settle their differences, the statements connected with such survey are not evidence in this case, and should not be considered by the jury in weighing the other evidence in the case." But the evidence did not call for the charge. The defendant had testified that plaintiff at that time had made no claim against him, but was making claim against Dailey; that the meeting was arranged between Whitman and Dailey; and that he was there simply to assist Wheeler to run the line. And there was no evidence to the contrary.

[12]    (f) As to the exception to the failure of the court to charge that "if the defendant openly and supposing he was cutting his own trees did so then he would not be liable to treble damages." It is sufficient to say that this request was substantially complied with. The court charged that "the jury should answer the special verdict 'No,' unless the defendant proved by a fair balance of the evidence that he acted through mistake, not the result of negligence or misconduct or that he had good reason to believe that the lumber was on the Dailey lot." The burden of showing that he acted through a mistake and unintentionally was on the defendant. The court left it for the jury to say whether the defendant did the cutting through mistake, or had good reason to believe that he had a right to cut as he did. See *Davis* v. *Cotey*, 70 Vt. 120, 39 Atl. 628; *Brown* v. *Mead & Mead*, 68 Vt. 215, 34 Atl. 950.

[13]    3. Sometime after this timber was cut negotiations began between the plaintiff and Dailey, the defendant's grantor, to ascertain the location of the line between the lots. They made arrangements to meet on the lot with one Wheeler, a surveyor, and have him run the line, and did so. The defendant went onto the lot and assisted in the survey. In connection with his testimony as to what occurred on this occasion plaintiff testified that the defendant did not at that time make any claim that he was not liable for the cutting. He also testified that on another occasion the defendant said "he would like to have Mr. Dailey come up and settle with me so he could know whether he owned the timber." It is claimed the admission of this evidence was error. But it is sufficient answer that an inspection of the record fails to show that the evidence was received under exception.

[14]    (a) Witness Pembroke was asked by defendant in cross-examination, ''Q. 2. After you leave this disputed territory continue right up through the woods then, and there is old blazed trees right through. Wouldn't you say that was the real line?'' It is enough to say that the answer to this question would neither explain nor throw light upon any issue being tried, and was properly excluded. As cross-examination it might well have been excluded as a matter of discretion. *Watress* v. *Trendall,* 74 Vt. 54, 52 Atl. 118; *Carpenter* v. *Corinth,* 58 Vt. 214, 2 Atl. 170.

[15]    (b) Defendant objected to the admission of the plan of engineer P. G. Smith on the ground that the plaintiffs were making a different claim than on the first trial, in that, on the first trial they claimed a four-sided parcel, while on this trial they are claiming a parcel of land in the form of triangle, as shown by the plan, and so the plaintiffs were estopped from making a different claim respecting the line than relied upon at the former trial. But this exception is without merit. It goes to the plaintiffs' right to recover, and not to the admissibility of the evidence. By the plan it appears that the plaintiffs are now claiming for cutting upon a portion only of the same land claimed at the previous trial. The doctrine of estoppel does not stand in the way of plaintiffs' claiming less of the same thing than at the previous trial. It is not shown that change in the claim relied upon in any way prejudiced the rights of the defendant.

[16]    (c) The offer of defendant to show that Smith, as the representative of the Parker-Young Company, directed Lyon to go ahead and cut as far as they did cut to the Chapin line, was properly excluded; for it in no way tended to show, as claimed by the defendant, that Lowe gave no such directions, and for the same reason what was said by Smith to Lyon as to what he should do in respect to the cutting was properly excluded.

[17]    4.    The defendant excepted to the argument of counsel for the plaintiffs wherein he said: ''Mr. Lowe is the only one who has given any evidence on that, and he says they didn't go over the Chapin line, if the court please, and if Mr. Davis actually measured the number of trees he said he did, and they were all north of the Wheeler line, and the number of trees is too large to be contained in this particular triangle, if you think that is

true, it necessarily follows that there must have been some of them north of the triangle—you cannot escape that.''

There was sharp controversy as to whether Davis, on cross-examination, had located all the trees counted by him north of the Wheeler line, as he had done in direct examination, and as to the construction and force of his testimony as a whole. Lowe had testified that they did not cut north of the Chapin line. The argument of counsel for plaintiffs was in answer to the claim of defendant as to the conclusions that must be drawn from the testimony as to the number of trees counted by Davis. It was a fair inference, and challenged the testimony of the defendant that they in fact stopped cutting at the Chapin line. In view of the claims of defendant, it was not improper to draw such inference from the testimony of Davis. The statement of counsel was a self-evident fact on the assumption made by the defendant, that the number of trees could not have been contained on the disputed tract if all were cut north of the Wheeler line. In permitting this statement there was no error.

[18]    The burden of making the record show that the argument was not legitimate is on the excepting party, and we find nothing in the record to warrant that conclusion. *Carleton* v. *E. & T. Fairbanks & Co.*, 88 Vt. 537, 93 Atl. 462. The other questions raised in defendant's brief are without merit.

*Judgment affirmed.*