M. M. TAPLIN ET AL. *v.* BURT STANLEY.

January Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed February 5, 1930.

*Shields & Conant* for the defendant.

*Lee E. Emerson* for the plaintiff.

SLACK, J. The action is trover for the conversion of a quantity of wooden bobbins. At the close of all the evidence defendant moved for a directed verdict on the ground, in effect, that plaintiffs had failed to show title or right of possession to the bobbins. The motion was overruled, and defendant excepted. The verdict was in defendant's favor, but on motion of plaintiffs it was set aside because of improper argument on the part of defendant's attorney, to which defendant excepted. These are the exceptions relied upon.

The plaintiffs insist that, since the verdict was for the defendant, error, if any, in denying his motion for a verdict was harmless. This would be so if the verdict had been allowed to stand. But, it having been set aside, it becomes necessary to inquire whether, as a matter of law, defendant's

motion should have been granted, because, if it should have been, what transpired in the course of argument is of no consequence. The situation is analogous to that presented in *Goupiel* v. *Grand Trunk Railway Co.*, 96 Vt. 191, 118 Atl. 586, 30 A. L. R. 690.

■ The bobbins in question were manufactured by defendant from logs furnished him by plaintiffs. There was a dispute as to the nature and terms of the contract under which this work was done. The plaintiffs claimed that the parties operated under a parol contract by the terms of which plaintiffs were to furnish the logs and advance money to pay defendant's help, and were to receive pay for both items from the proceeds of the bobbins, and have a lien on them to secure such payment. The defendant claimed that the rights of the parties were fixed by a written contract previously made by him with the firm of Hanson & Dodge which was taken over by and became binding upon the plaintiffs. Under that contract the plaintiffs' lien on the bobbins covered the price of the logs only, and they had received enough money to more than pay for those at the time of the alleged conversion. So, if the evidence fairly tended to show the contract to be as plaintiffs claimed, the case was rightly submitted to the jury; if it did not, defendant's motion should have been granted.

It appeared that the plaintiff, Charles Taplin, made whatever contract was made with the defendant. He testified, in substance, that the contract was oral; that plaintiffs were to furnish defendant logs at an agreed price per thousand, and money to pay his help for manufacturing and loading the bobbins; that plaintiffs were to receive the pay for all the bobbins, and that "in the final windup any balance would go to Mr. Stanley"; that he, Taplin, had no knowledge respecting the terms of defendant's contract with Hanson & Dodge, except he knew that they received pay for all bobbins manufactured by defendant under that arrangement. True, he admitted on cross-examination that on July 10, 1925, he wrote a former customer of Hanson & Dodge, to whom he was then sending a bill of lading for a car of bobbins shipped by defendant, that, "We have entered into the same arrangement with the Stanleys as has been in force with Hanson & Dodge," and that six days later he again wrote the same party the same, with the addition "and you may remit direct to us." But he testified that he

thereby referred to the manner of payment only, that is, that the customer was to pay the plaintiffs for the bobbins shipped by defendant the same as they had previously paid Hanson & Dodge for bobbins shipped by defendant while he was operating with them.

While neither of the plaintiffs testified in so many words that they had a lien on the bobbins for advancements, Charles Taplin testified, as above stated; and also that plaintiffs never made any arrangement with defendant to relinquish their interest in the logs until they were fully paid. Moreover, the defendant, who was the first witness called by plaintiffs, testified as follows: ''Q. Did you raise any objection to these cheques coming in the name of the Taplins? A. No, I did not. Q. Perfectly argeeable to you? A. It was until the lumber was paid for. Q. You didn't claim any interest at all in this lumber until it had been paid for, did you? * * * * * A. I don't exactly get you. Q. What don't you understand about the question? A. Well, in regard to the claiming anything in these bobbins until the lumber was paid for. Q. Well, do you? A. I claim the bobbins because it was nothing only a verbal agreement, as long as they was shipped in my name. Q. Then why did you allow the cheques to come in Mr. Taplin's name? A. Because for the money that he had paid out for the help. Q. You wanted to secure him on that? A. That is what they were supposed to go for—he was to furnish the payroll, and he had the carload of bobbins back to pay us. Q. He had the bobbins to pay for what? A. Help and the lumber. Q. Until such time as that was paid for you didn't claim any interest in the lumber or bobbins, did you? A. Well, no, of course I couldn't and —'' Counsel: ''That is all; you have answered my question.''

The foregoing evidence clearly made a case for the jury.

In considering the other exception it should be borne in mind that a motion of this character is addressed to the sound judicial discretion of the trial court, and its action is not reviewable unless an abuse of such discretion is made to appear. There are different ways of dealing with the situation when an attorney persists in improper argument after being cautioned or admonished by the court; the attorney may properly be dealt with for contempt, a mistrial may be declared and the case proceed *de novo,* or the verdict, if believed to be

tainted by such misconduct, may be set aside. *Fadden* v. *McKinney et al.*, 87 Vt. 316, 89 Atl. 351; *Fraser* v. *Blanchard & Crowley*, 83 Vt. 136, 73 Atl. 995, 75 Atl. 797; *Sears* v. *Duling*, 79 Vt. 334, 65 Atl. 90; *Lockwood* v. *Fletcher*, 74 Vt. 72, 52 Atl. 119; *Smith Woolen Co.* v. *Holden*, 73 Vt. 396, 51 Atl. 2. It is urged by the defendant that, if the circumstances in the instant case required action, the court should have declared a mistrial then and there and not have waited the result of the verdict. But we think the course adopted by the court the better one in the circumstances. The chief expense of the trial had been incurred, and there was a possibility, perhaps a probability, that the mischief, if any, would be cured by the verdict, and the defendant is placed in no worse position than he would have been had a mistrial been declared.

In the course of his argument to the jury defendant's counsel said, "They want you to find him (defendant) guilty so they can take his body and put him in jail." At this point he was interrupted by the court, and informed that it was improper for him to refer to the effect of a verdict adverse to his client, but was told that he might explain to the jury the difference between the essential elements of an action of trover and an action of contract. To notice in detail all that transpired subsequently is unnecessary, and would be unwarranted. Suffice it to say that the record shows a rather persistent effort by counsel to get before the jury, in different ways, the fact that his client's body would be held to respond if the verdict was against him. Manifestly this line of argument was improper, though too often indulged in, since the result of the verdict had no bearing on the question of defendant's guilt or innocence of the conversion charged. Whether what appears would necessitate a reversal if the case was here on exception to the argument we need not, and do not decide, since such is not the situation. The question is, does the record show an abuse of judicial discretion, and this must be answered in the negative.

*Affirmed and remanded.*