IN RE SUSAN E. SAWYER'S WILL.

February Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed May 7, 1930.

474

*Robert R. Twitchell* for the appellants.

*Raymond Trainor; Paul Gilioli, Alban J. Parker,* and *Loren R. Pierce* for the appellee.

THOMPSON, J.   The county court on appeal from the probate court rendered judgment allowing and establishing a certain written instrument as the last will and testament of Susan E. Sawyer.   The case is here on the contestants' exceptions. They opposed the will on the ground that it was not attested and subscribed by three credible witnesses in the presence of the said Susan E. Sawyer and of each other.

The case was heard below with No. 1236a, which was an appeal from a decree of said probate court disallowing a codicil attached to said will, one Lois M. d'Entremont Gates being the appellant.   The court below directed a verdict disallowing the codicil.   That case is material in the instant case only on the question of the correction of the verdict hereinafter considered.

The will bears the signatures of F. W. Fitzgerald, Fred R. Hudson, and Ruth E. Hudson as witnesses in the order named.   Ruth E. Hudson was married after the will was executed, and her name was Ruth Hudson Brown at the time of the trial below.   It appears from the will that another name had been written and erased where the name of Fred R. Hudson now appears.   Mrs. Fitzgerald, wife of F. W. Fitzgerald, is named as a legatee in the will.   The will bears the date of August 14, 1924.   At that time Mrs. Brown and her brother, Fred R. Hudson, lived in the house of F. W. Fitzgerald, which was diagonally across the street from the home of the testatrix.

The three attesting witnesses were produced and examined by the proponent, and they were the only witnesses who testified about the execution of the will.   Mr. Fitzgerald and Mr. Hudson testified that the will was witnessed in the living room of the testatrix's home and that Mrs. Brown was present at that time.

Mr. Fitzgerald testified that the testatrix said it was her will and wished they would sign it.   He signed his name, and Mr. Hudson and Mrs. Brown signed their names to the will in the presence of the testatrix and of each other.   He had no recollection of seeing the testatrix sign the will or of seeing her signature thereon.   There was an erasure on the will at that time where Mr. Hudson wrote his name, but he knew nothing about it.

Mr. Hudson testified that the testatrix said that she had signed the will and asked him to witness it, and he saw her signature on the will. There was an erasure on the will where he wrote his name. Mr. Fitzgerald and Mrs. Brown were present when he wrote his name, but he did not remember seeing Mrs. Brown write her name.

Mrs. Brown testified that she did not witness the will in the testatrix's home, that she was never in her house. She was not present and did not see her brother when he signed the will. She only signed the will once, and that was in Mr. Fitzgerald's office in his house, and, as she remembered, it was in 1924. The testatrix, Mr. and Mrs. Fitzgerald and herself were the only persons present, and Mrs. Fitzgerald wrote her name where the name of Fred R. Hudson now appears.

It appears from the record that the trial of the case below began on Monday afternoon, June 13, 1927, and was finished the next day. Mrs. Brown was then living in New York City. At the request of Mr. Twitchell, one of contestants' counsel, she went to Woodstock to attend the trial, arriving there about noon on June 13. She talked with Mr. Twitchell at his office that afternoon, but did not go to the court house that day as Mr. Twitchell told her they would send for her when they wanted her. It is fairly inferred from the record that counsel for the contestants did not tell proponent's counsel that Mrs. Brown was there.

Tuesday forenoon, after Mr. Fitzgerald and Mr. Hudson had testified, proponent's counsel stated that all they knew about the other witness was that she lived in New York, but they had heard indirectly that she had been brought to Woodstock by the contestants; they did not know where she was and could not produce her, but, if counsel for the contestants would get her for them, they would put her on the stand. Contestants' counsel, after some discussion, stated that the witness was in the clerk's office, and the court directed Mr. Twitchell to tell the witness to come to the court room. As Mr. Twitchell entered the court room with the witness, proponent's counsel said: "If we had known she was here, we would have subpoenaed her." To this Mr. Twichell said: "I would like an exception to that remark." The court said: "If you are entitled to an exception you may have one."

During the direct examination of Mrs. Brown, contestants' counsel remarked that the examiner was asking leading questions. A discussion followed in which proponent's counsel said: "This is all a matter of recollection; we have had no opportunity to talk with this young lady until just now, and I want to know how the recollection came about."

Court: "I think his examination is all proper under the circumstances."

Mr. Twitchell: "I ask for an exception. He says he has not had any opportunity to talk with the witness; he has had the same opportunity anyone else has."

Court: "It already appears that he has not seen her before, and that she comes from New York. I don't think that statement was made with an intent to influence anyone."

Mr. Trainor: "Certainly not. It is a fact I have not had an opportunity. I am not complaining anyone has wrongfully denied me an opportunity." Contestants' counsel was then allowed "such an exception as you are entitled to."

It appears that after the jury was impaneled on Monday afternoon, the court, at the request of the proponent, excluded the witnesses to the will, except the one testifying, from the courtroom.

■ ■ The contestants argue that the remarks of proponent's counsel were "most unfair and prejudicial tactics" in that they conveyed the idea to the jury that the contestants, by not breaking the order of the court, had kept the witness from the proponent's counsel, and that the court added further prejudice by his remarks, and by telling counsel that he might have such an exception as he was entitled to.

This argument would have a greater appeal to us if it did not appear that the order of the court excluding the witnesses had nothing to do with the witness Brown staying away from the courtroom on Monday afternoon. It is true that she was in the court house Tuesday morning, but she was not in the witness room with the other witnesses, but down stairs in the clerk's office. It is apparent that the contestants were not advertising the presence of the witness in Woodstock, and were not desirous of having her interviewed by counsel for the proponent. They did not produce her in the courtroom until ordered to do so by the court, and in their brief they criticize the court be-

cause it "allowed the proponent to steal the appellants' witness and question her for six and one-half pages of the transcript."

It was the duty of the proponent to produce and examine all the attesting witnesses to the will if they were in reach of process and legally obtainable at the trial. *Thornton* v. *Thornton,* 39 Vt. 122, 151; *Denney* v. *Pinney,* 60 Vt. 524, 527, 12 Atl. 108. We think, considering the circumstances, that the remarks of the court and of proponent's counsel were warranted; that they were not intended to prejudice the jury; and that the contestants have no grounds for complaint. If the jury was in any way prejudiced by these incidents, it was caused by the conduct of contestants' counsel. These exceptions are not sustained.

■ Counsel for the proponent asked Mrs. Brown a leading question in direct examination. It was objected to on the ground that it was leading. The court in its discretion permitted her to answer, and the contestants took an exception. This exception is without merit. *In re Estate of Martin,* 92 Vt. 362, 365, 104 Atl. 100; *Berry* v. *Doolittle,* 82 Vt. 471, 473, 74 Atl. 97; *Hathaway* v. *Goslant,* 77 Vt. 199, 207, 59 Atl. 835; *State* v. *Bedard,* 65 Vt. 278, 284, 26 Atl. 719; *Goss* v. *Turner,* 21 Vt. 437, 439.

■ During the proponent's opening argument the contestants excepted to the statement "about the secrecy of Mrs. Brown being brought here." Counsel at once withdrew the word "secrecy," and the court told the jury to ignore what counsel had said about how the witness came to Woodstock and they not knowing about it. This cured the error, if there was any. *Green* v. *LaClair,* 89 Vt. 346, 351, 95 Atl. 499; *Fraser* v. *Blanchard & Crowley,* 83 Vt. 136, 144, 73 Atl. 995; *Lockwood* v. *Fletcher,* 74 Vt. 72, 52 Atl. 119; *Kilpatrick* v. *Grand Trunk Ry. Co.,* 74 Vt. 288, 308, 52 Atl. 531, 93 A. S. R. 887; *Billings* v. *Metropolitan Ins. Co.,* 70 Vt. 477, 486, 41 Atl. 516; *Smith Woolen Machine Co.* v. *Holden,* 73 Vt. 396, 403, 51 Atl. 2.

During the closing argument of counsel for the proponent the contestants took three exceptions to the argument, as follows: (1) "I object to Mr. Trainor's argument and ask for an exception to his arguing on the lack of evidence. There is no evidence that Fred Fitzgerald or Fred Hudson were talked to; he says that evidence wasn't introduced." (2) "I ask for an exception to Mr. Trainor's argument that when he signed

his name on that paper there was no name there.'' (3) ''We ask for an exception to that statement—Why was her name scratched out?—We submit that if they wanted to find out they had a right to do so.''

▇▇ This court will not reverse a judgment unless error is affirmatively shown. *Niles* v. *Fuller*, 101 Vt. 471, 474, 144 Atl. 375. And the burden of making the record show that an argument was not legitmate is on the excepting party. *Whitman* v. *Lowe*, 98 Vt. 152, 162, 126 Atl. 513; *Carleton* v. *Fairbanks*, 88 Vt. 537, 553, 93 Atl. 462; *Fadden* v. *McKinney*, 87 Vt. 316, 328, 89 Atl. 351. No part of the offending argument is before us, except what is contained in the statement of counsel when he took the exceptions. There is not enough before us so we can say that counsel transcended the bounds of legitimate argument. The exceptions are not sustained.

▇ The contestants excepted to the refusal of the court to charge the jury as requested, that, if the jury ''find that there was an alteration of proponent's Exhibit 1, the will and testament of Susan E. Sawyer as originally executed, and then a faulty re-execution and republication, then you should find that the proponent's Exhibit 1 is not the last will and testament of Susan E. Sawyer.''

This request was properly refused, because it assumes that there had been a former legal execution and publication of proponent's Exhibit 1 as the last will and testament of the testatrix, while the evidence does not support that assumption. It is true that the witness Brown testified that she signed proponent's Exhibit 1 at Mr. Fitzgerald's house and Mr. and Mrs. Fitzgerald signed it at the same time and the testatrix was present, but there is no evidence that the testatrix signed, or had signed, this exhibit at that time.

The court fully instructed the jury as to the statutory requirements for a legally executed will, and then, among other things, said: ''It is a case—whichever way you believe—that to sustain the will you must be convinced by the proper measure of proof that all three were present and signed as witnesses in the presence of each other and in the presence of the testatrix.'' And again: ''This case is simply a case of how you find the fact to be. Were those three witnesses all there together when they signed or were they not all there at the same time? That is the question.'' These portions of the charge covered

fully all that the contestants could ask as to a faulty execution of the will, and they evidently were satisfied as they took no exception to the charge as given. The exception is not sustained.

The jury returned a verdict sustaining the will, and then separated. It was discovered later that the title of the case on the verdict was "*In re Est. of Susan E. Sawyer, L. M. d'Entremont Gates, Appt.,*" which was the title of the codicil case, in which the court directed a verdict disallowing the codicil, and not the title of the case just tried. The jury was recalled, the verdict was corrected by inserting the proper title, and the jury delivered the corrected verdict in open court. The contestants then excepted because the jury had not been polled. The jury was then polled, and it again delivered the corrected verdict in open court. The contestants excepted and were allowed an exception to all of these proceedings.

There was no error in permitting the jury to correct its verdict at it did. *Montgomery* v. *Maynard,* 33 Vt. 450, 455; *Foote* v. *Woodworth,* 66 Vt. 216, 222, 28 Atl. 1034.

*Judgment affirmed. To be certified to the probate court.*